**PULLMAN, INCORPORATED, Plaintiff,**

v.

**PHOENIX STEEL CORPORATION,
Defendant.**

Superior Court of Delaware,
New Castle.

Feb. 9, 1973.

Charles S. Crompton, Jr., Potter, Anderson & Corroon, Wilmington, for plaintiff.

Richard J. Abrams, Richards, Layton & Finger, Wilmington, for defendant.

## OPINION

WRIGHT, Judge.

Defendant, Phoenix Steel Corporation, a Delaware corporation (Phoenix), has moved for summary judgment in this action for declaratory judgment brought by Pullman, Incorporated, also a Delaware corporation (Pullman). The issue is whether or not a State court must apply the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1970), in cases before it involving contracts which touch or concern interstate or foreign commerce.

■ Summary judgment may be granted only where, considering the facts in a light most favorable to the non-moving party, there is no material issue of fact and the moving party is entitled to judgment as a matter of law. Matas v. Green, 3 Storey 473, 171 A.2d 916 (Del.Super.1961); Superior Court Rules, Civil, R. 56(c), Del.C. Ann.

The essential facts of the case are as follows: In August, 1967, Pullman, through one of its divisions, Swindell-Dressler Co., entered into a written contract with Phoenix by which Pullman was to "design, engineer, furnish and erect" an electric furnace melt shop to be used in the production of steel at Phoenix's Claymont, Delaware plant. Incorporated by reference into the contract was a separate Technical Proposal previously prepared by Pullman and approved by Phoenix which set forth detailed plans, designs and specifications for the project. As work on the melt shop neared completion, Phoenix, anxious to place the $18.2 million facility into operation as soon as possible, asked for and received Pullman's permission to start up some of the new equipment. This action by the parties contravened the express terms of the contract, which provided that the melt shop would be turned over to Phoenix after Pullman had finished it. It

was during this initial period and afterward that Phoenix claims it discovered many deficiencies in the facility which prevented it from attaining its expected production standards. Pullman and Phoenix attempted to correct the problems that arose in the operation of the complex facility, but Phoenix continued to express dissatisfaction with the work.

As provided for in the contract, the parties entered into negotiations to iron out their differences. These discussions began in about January, 1969 and continued until August, 1971 without success. Finally, on August 5, 1971, Phoenix notified Pullman in writing that it was invoking the arbitration provisions of the contract, demanded that the dispute be submitted to binding arbitration and named its arbitrator. In response to requests by Pullman, defendant three times granted extensions of time to permit continued negotiations. Finally, on November 12, 1971, the date the third and last extension granted by defendant expired, Pullman filed suit in the Court of Chancery to enjoin Phoenix from proceeding with arbitration. That Court granted a stay pending a determination in the Superior Court whether an executory agreement to arbitrate is valid and enforceable under Delaware law.

The same day it filed the above suit in the Court of Chancery, Pullman brought this action for declaratory relief under the provisions of 10 Del.C. §§ 6501–03 and Rule 57, Superior Court Rules, Civil, seeking judgment (1) declaring that Pullman is not liable to defendant with respect to any matter arising out of the design and construction of the melt shop; (2) declaring that defendant may not demand arbitration; and (3) staying arbitration proceedings. Phoenix in its answer counterclaimed contending that the arbitration provisions of the contract are valid and enforceable or, in the alternative, that Pullman is liable in damages for breach of the arbitration agreement.

The arbitration provisions of the contract provide:

(1) Any difference or dispute concerning any matter or thing done or omitted to be done by either party shall be given fair consideration by both parties and an earnest effort shall be made by them to reach an equitable settlement.

(2) If such effort, after a reasonable time not exceeding one (1) month, shall fail, then the difference or dispute shall be submitted to an arbitrator acceptable to both parties, who shall be a citizen of the United States residing and doing business in the United States and reasonably familiar professionally with the general field to which this agreement relates. His decision shall be binding on both parties and no appeal shall be taken therefrom.

(3) If within thirty (30) days after either party requests arbitration the parties are unable to agree on a single arbitrator, or at the option of either party on notice to the other, each party shall within fifteen (15) days thereof appoint one (1) arbitrator, and the two (2) arbitrators so selected shall select a third one, qualified as in the next preceding paragraph. If the two (2) arbitrators chosen by the parties do not within thirty (30) days agree upon the choice of the third arbitrator, he shall be named as (sic) the request of the more diligent party by the American Arbitration Association and shall be qualified as provided in the next preceding paragraph. If either party should fail to appoint its arbitrator within the time limited, the arbitration shall proceed before the one (1) chosen, with the same force, effect, and finality as if there were three (3).

The two remaining paragraphs of the arbitration article relate to the vote required to make an award by the arbitrators and the allocation of the costs of arbitration between the two parties.

██ It seems clear that the defendant's letter of August 5, 1971 was sufficient notice of its intent to invoke arbitration. Preliminarily, plaintiff asserts that summa-

ry judgment cannot be granted because there exists a material issue of fact whether Phoenix waived its right to invoke arbitration by waiting more than 18 months in the face of an express provision that arbitration shall be invoked "after a reasonable time not exceeding one (1) month". This case is distinguishable from Ferguson v. Berbusse, 216 A.2d 876 (Del.Super.1966), where it was held that a delay of 9 and one-half months in asserting a right to arbitration after the defendant filed its answer constituted a waiver by defendant of its right to invoke arbitration; here, defendant demanded arbitration prior to commencement of suit by plaintiff. Whether defendant here waived its right to invoke the arbitration provisions of the contract is a question to be decided by the trier of fact. Nathan Miller, Inc. v. Northern Ins. Co. of New York, 3 Terry 523, 39 A.2d 23 (Del.Super.1944); G.M.S. Realty Corp. v. Girard Fire & Marine Ins. Co., 8 Terry 216, 89 A.2d 857 (Del.Super.1952).

Assuming, without deciding, that defendant did not waive its rights to arbitration under the contract, the Court now turns to the question of whether the United States Arbitration Act is applicable in actions before State courts. The movement toward adoption of statutes to reverse the traditional hostility of judges and courts to arbitration agreements arose out of the desire of commercial interests for a relatively speedy and certain means of resolving disputes. Too often, it was felt, the judicial process was too slow and cumbersome to keep pace with the businessman's need for quick resolution of differences and the size and technical complexity of many commercial transactions were sometimes exceedingly burdensome to courts and juries, alike. In answer to this demand, Congress in 1925 enacted the United States Arbitration Act.

Section 2 of the Act makes "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," a written arbitration provision in "any maritime transac-tion or contract evidencing a transaction involving commerce". "Maritime transactions" are those matters which fall within admiralty jurisdiction and "commerce" means, essentially, interstate and foreign commerce. 9 U.S.C. § 1 (1970). Defendant, Phoenix, argues that sections 1 and 2 of the Act make arbitration agreements in contracts touching upon interstate commerce valid, irrevocable and enforceable and, as an exercise of Congress' plenary power under the Commerce Clause coupled with the Supremacy Clause, State courts are required to give effect to the federal enactment in actions involving interstate contracts.

■ That the contract between Pullman and Phoenix is a contract touching or concerning interstate commerce seems clear. Although the construction of the melt shop was to be done in Delaware, the component parts and subsystems were provided by subcontractors from several States.

In support of its position, Phoenix relies upon Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. denied 364 U.S. 801, 81 S.Ct. 27, 5 L. Ed.2d 37 (1960) and American Airlines, Inc. v. Louisville & Jefferson County Air Board, 269 F.2d 811 (6th Cir. 1959). In *Robert Lawrence,* the Second Circuit held that the body of law created under the United States Arbitration Act is substantive, not procedural, in character and encompasses questions of interpretation and construction as well as questions of validity, revocability and enforceability to be adjudicated by the federal courts whenever the courts have subject matter jurisdiction, including diversity jurisdiction.

■ In *American Airlines,* the Sixth Circuit held that a lease of space at a municipally owned airport by out-of-state airlines was a transaction involving interstate commerce, thus bringing the Arbitration Act into play, but remanded the case to the district court pending a determination in the Kentucky courts of certain underlying

questions of that State's public policy. It should be noted at this point that in both *Robert Lawrence* and *American Airlines,* the federal court's jurisdiction was based upon diversity and the Arbitration Act does not itself confer jurisdiction.

■ In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court upheld the decision of the Second Circuit which relied upon its earlier holding in *Robert Lawrence,* "albeit for somewhat different reasons". In *Prima Paint,* the plaintiff corporation acquired *Flood & Conklin.* By agreement, *F & C* was to furnish advice and consultation for a term of 6 years and *inter alia* the agreement further provided that "(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration . . . ." *Prima Paint,* in seeking to avoid arbitration, contended that *F & C* had fraudulently represented that it was solvent when, in fact, it was on the verge of declaring bankruptcy when the sale was made. In reaching its decision that the Arbitration Act applied to the transaction, thus leaving the issue of fraud in the inducement to the arbitrator, the Supreme Court expressly refused to rely upon the reasoning of the Second Circuit in *Robert Lawrence;* only Justice Harlan indicting a desire to accept the rationale of *Robert Lawrence* in toto. Simply stated, the Supreme Court in *Prima Paint* held that the United States Arbitration Act established a substantive rule of federal law which relieved the federal courts of the necessity of applying State law in diversity cases under the *Erie— Guaranty Trust* doctrine. The Court did not hold, as argued by Phoenix, that Congress had preempted the field of contracts in interstate commerce to the extent that State courts are obliged to apply the federal law in such cases. That the holding in *Prima Paint* will often result in different results between cases tried in federal courts and those tried in State courts may

well be true, as defendant points out, but this Court, not being required to apply the federal statute, must apply the law of Delaware.

■ The Court notes that the General Assembly has enacted the Uniform Arbitration Act, 10 Del.C. §§ 5701–28, on April 30, 1972, thus expressing a change of the public policy of this State as reflected in a long line of case law. By its express terms, the new law is not retroactive and became effective 60 days after approval by the Governor. 10 Del.C. § 5720. Clearly, it was the intent of the legislature to allow all contracts entered into prior to the effective date of the new law to remain unaffected by the change in public policy and this Court is, therefore, bound to apply the law of the State of Delaware as it existed at the time the contract was made, i.e., August 23, 1967.

■ At common law, executory agreements to arbitrate disputes or differences were disfavored on the theory that they were ousters of the courts' jurisdiction or mere illusory agreements to agree. A party to such an agreement could revoke it by giving notice to the other or by filing suit in contravention of the agreement to arbitrate. Similarly, such agreements were usually not specifically enforceable and only nominal damages were awarded for their breach. Fooks v. Lawson, 40 A. 661 (Del.Super.1893). Defendant has cited numerous Delaware cases as holding that the Courts of this State will sustain arbitration agreements. In all of these cases, an award had been made by the arbitrator and an appeal taken therefrom and, therefore, these precedents are not on point. In Randel v. Chesapeake & Delaware Canal Co., 1 Del. 233, 1 Har. 233 (Del.Supr.1833), the Court held, *inter alia,* that a prospective agreement to refer all matters in dispute which may arise will not oust the jurisdiction of the Court and even upon submission of existing disputes either party may revoke the submission and prevent the

award, although he may be liable in damages. In Electrical Research Products, Inc. v. Vitaphone Corporation, 20 Del.Ch. 417, 171 A. 738 (Del.Supr.1934) the Court upheld a decree of the Court of Chancery denying relief to a party who sought to revoke an executory arbitration agreement prior to the making of an award where the party seeking enforcement had expended more than $450,000 and the revoking party was guilty of "unclean hands". These peculiar circumstances are not present in the instant case.

Finally, Phoenix refers the Court to the recent case of Hanby v. Maryland Cas. Co., Del.Supr.Ct., 265 A.2d 28 (1970). This case concerned an appraisal clause under an insurance policy, not arbitration. An agreement for arbitration ordinarily encompasses the disposition of the entire dispute between the parties on which award a judgment may be entered. In contrast, appraisal extends only to a determination of actual cash value, all other issues being reserved for decision by a court. 5 Am.Jur.2d Arbitration and Award § 3, pp. 520–21.

The law of Delaware pertaining to contracts entered into before the effective date of the Uniform Arbitration Act is clear: Absent undue hardship, unclean hands or other reason, executory arbitration agreements are valid, but revocable by either party and not specifically enforceable at any time prior to entry of a proper award by the arbitrating authority, and revocation may be by the giving of notice of an intent to disaffirm or by bringing an action in contravention of the arbitration agreement.

An appropriate order will be entered upon presentation.

It is so ordered.