**Lynn M. SMITH,[1] Respondent Below, Appellant.**

v.

**Carol M. GUEST, Petitioner Below, Appellee.**

No. 252, 2010.

Supreme Court of Delaware.

Submitted: Feb. 23, 2011.

Decided: March 14, 2011.

Reargument Denied April 12, 2011.

See also 968 A.2d 1.

---

**1.** The Court, *sua sponte,* has assigned pseudonyms to all parties under Supreme Court Rule 7(d).

Michael P. Kelly (argued), Daniel M. Silver, and Kate Roggio Buck, Esquires, of McCarter & English, LLP, Wilmington, Delaware; for Appellant.

Richard H. Morse, Esquire (argued), American Civil Liberties Union of Delaware, Wilmington, Delaware; Michael W. Arrington, Esquire, of Parkowski Guerke & Swayze, P.A., Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

This case arises from new legislation enacted by the General Assembly following this Court's 2009 decision in *Smith v. Gordon* ("*Smith I* "),[2] which involved the same dispute between the same parties. Respondent-below appellant, Lynn M. Smith ("Smith"), appeals from an April 23, 2010 Family Court order awarding joint custody of ANS, a minor child, to petitioner-below appellee, Carol M. Guest ("Guest"). The Family Court granted custody to Guest based on the new legislation enacted after *Smith I*—Senate Bill No. 84 ("SB 84"), codified at 13 *Del. C.* § 8–201.[3] On appeal, Smith seeks reversal of the Family Court's judgment, claiming that SB 84 violates the United States and Delaware Constitutions, and that *res judicata* bars Guest's custody petition. Smith further claims that even if SB 84 is constitutional, the Family Court legally erred by applying that statute retroactively, and by considering facts that occurred before SB 84 was enacted. For the reasons next discussed, we conclude that SB 84 is constitutional, that the Fami-

---

**2.** 968 A.2d 1 (Del.2009).

**3.** 13 *Del. C.* § 8–201 (2010).

ly Court committed no legal error, and affirm its judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Ever since their relationship ended in May 2004, Smith and Guest have battled for custody over ANS, who is Smith's adopted child.[4] The facts underlying the parties' continued custody dispute are essentially those as recited in our *Smith I* opinion.[5]

Under the Delaware Uniform Parentage Act ("DUPA"),[6] if a petitioner can establish that she or he has a legal parent-child relationship with a minor child, as defined by 13 *Del. C.* § 8–201, that petitioner is a legal "parent" who is entitled to seek custody of the child under 13 *Del. C.* § 721(a).[7] In *Smith I,* the Family Court concluded that Guest was not a legal "parent" under Section 8–201, "because she could not establish a *legal* mother-child relationship [since] she was neither the biological or adoptive mother."[8] The Family Court found, however, that Guest had standing to petition for joint custody with Smith because Guest claimed to be a *de facto* parent of ANS.[9]

This Court reversed, holding that as a matter of law, a *de facto* parent did not have standing as a "parent" to file a custody petition.[10] In *Smith I,* we noted that when the Delaware General Assembly adopted DUPA, it did not include a *de facto* parent within the statutory definition of "parent" because Section 8–201 did not expressly recognize *de facto* parent-child relationships.[11] Moreover, we held that that omission was "not inadvertent," and that "[w]here the General Assembly enacts a comprehensive statutory scheme that reflects a public policy unambiguously to define the parent-child relationship as a *legal* relationship, any modifications in that policy must be made by the legislature."[12]

After we decided *Smith I,* the Delaware General Assembly enacted Senate Bill 84 ("SB 84"), which amended DUPA to include a *de facto* parent within the statutory definition of "parent," thereby expressly recognizing *de facto* parent-child relationships.[13] New Section 5 of SB 84 provided that the amendments to DUPA would apply retroactively,[14] and new Section 6 provided that "[n]o Court decision based upon a finding that Delaware does not recognize de facto parent status shall have collateral estoppel or res judicata effect."[15] Although Sections 5 and 6 were not codified in the Delaware Code, both parties agree (and we hold) that those provisions are legally a part of the amended statute.

---

4. Neither Smith nor Guest is the biological parent of ANS.

5. *See Smith I,* 968 A.2d at 2–4.

6. Delaware Uniform Parentage Act, 13 *Del. C.* § 8–101 *et seq.*

7. *See* 13 *Del. C.* § 721(a) (2010) (providing that a person must be a "parent" of a child to seek custody); 13 *Del. C.* § 8–102(12) (2010) (defining "parent" as "an individual who has established a parent-child relationship under § 8–201 of this title."); 13 *Del. C.* § 8–201 (2010) (explaining "parent-child relationship" and what must be shown to establish one).

8. *Smith I,* 968 A.2d at 7.

9. *Id.* at 8–9.

10. *See id.* at 15–16.

11. *Id.* at 14–15.

12. *Id.* at 15.

13. S.B. 84, 145th Gen. Assemb. (Del.2009) (amending 13 *Del. C.* §§ 8–201, 2302(13)).

14. *Id.* at § 5 ("The provisions of this Act shall have a retroactive effect.").

15. *Id.* at § 6.

On July 6, 2009, the day that SB 84 was enacted into law, Guest filed a new petition for custody in Family Court. Smith moved to dismiss the petition on the basis that SB 84 was unconstitutional, and that Guest's new custody petition was barred by *res judicata*. The Family Court denied Smith's motion, finding that SB 84 did not violate either the United States or the Delaware Constitution, and that *res judicata* was inapplicable.[16] In deciding the constitutionality of SB 84, the court determined that it did not need to consider Sections 5 and 6 of SB 84, because those Sections had not been codified.[17] Therefore, the Family Court considered only Sections 1–3 (which amended the definition of "parent-child relationship" in 13 *Del. C.* § 8–201) and found that those Sections were constitutional.[18]

Thereafter, Smith moved *in limine* to exclude certain evidence and testimony regarding events that occurred before July 6, 2009. Smith argued that because SB 84 was not "retroactive," only events that post-dated SB 84's enactment could be considered. Alternatively, Smith moved *in limine* to exclude evidence and testimony regarding acts that occurred after May 2004, arguing that any interactions between Guest and ANS after that date had occurred pursuant to court orders that were "vacated" by our *Smith I* decision. The Family Court denied both *in limine* motions, concluding that although SB 84 had no (codified) retroactivity clause, the Sections that were codified demonstrated a legislative intent that the court should consider evidence antedating SB 84's enactment.[19]

In February 2010, the Family Court held a two-day hearing on Guest's custody petition. On April 23, 2010, that court entered an order and judgment determining that Guest was a *de facto* parent and awarding her joint legal and physical custody of ANS with Smith.[20] Smith appeals from that judgment.

## ANALYSIS

On appeal, Smith claims that the Family Court reversibly erred in granting Guest joint custody of ANS on three grounds. *First*, she challenges the constitutionality of SB 84. *Second*, she argues that the Family Court erroneously concluded that *res judicata* did not bar Guest's custody petition. *Third*, Smith contends that even if SB 84 is constitutional, the Family Court erred by applying Section 8–201 "retroactively." We consider those claims in that sequence.

### I. Is SB 84 Unconstitutional?

Smith first argues that SB 84 is unconstitutional under the United States and the Delaware Constitution. Her Delaware constitutional argument is that Sections 5 and 6 of SB 84 violate the Separation of Powers Doctrine, and alternatively, they violate the "single-subject" requirement. Her Federal constitutional claim is that SB 84 violates the Due Process and

16. *C.M.G. v. L.M.S.*, 2009 WL 5697869 (Del. Fam.Ct. Dec. 21, 2009) (hereinafter *"Motion to Dismiss Op."*).

17. *Id.* at *3.

18. *Id.* at *4–6. The court also denied Smith's motion for reargument on the same grounds. *C.M.G. v. L.M.S.*, 2010 WL 1199525 (Del.Fam. Ct. Jan. 21, 2010) (hereinafter *"Reargument Op."*).

19. *C.M.G. v. L.M.S.*, File No. CN04–08601, Petition No. 09–22068 (Del.Fam.Ct. Jan. 27, 2010) (letter decision and order denying motions *in limine* ).

20. *C.M.G. v. L.M.S.*, 2010 WL 2696112 (Del. Fam.Ct. Apr. 23, 2010) (hereinafter *"Custody Petition Op."*).

Equal Protection Clauses of the Fourteenth Amendment. This Court reviews claims involving the constitutionality of a statute *de novo*.[21]

### A. Are Sections 5 and 6 of SB 84 Effective Law?

■ As a predicate matter, this Court must first determine whether (uncodified) Sections 5 and 6 of SB 84 constitute operative Delaware law. Both Smith and Guest agree that they do. The Family Court held that in interpreting SB 84, it was not required to consider Sections 5 and 6, because although those Sections were included in the Historical and Statutory Notes of the final statute, they were not included in the codified text.[22]

■ In so ruling, the Family Court erred. The General Assembly enacted SB 84 in its entirety, not just Sections 1–4.[23] That the Revisors (the Delaware Code's editors)[24] decided not to codify Sections 5 and 6 of SB 84 does not render those sections legally nugatory or ineffective. The Code expressly states that "the Revisors shall not alter the sense, meaning or effect of any act of the General Assem-

bly. . . ."[25] One possible explanation for their failure to codify is that the Revisors believed Sections 5 and 6 to be "construction clauses"[26] whose omission was required by 1 *Del. C.* § 211(b).[27] But, even if that were the case, Sections 5 and 6 cannot be disregarded in interpreting SB 84, because to do so would ignore the General Assembly's express intent.[28]

■ In *Elliott v. Blue Cross and Blue Shield of Delaware*, this Court held that "the Revisors' failure to incorporate [an] amendment into the 1974 revised Code does not void it. Having been duly passed by the General Assembly and signed by the Governor, the amendment is law."[29] Although Sections 5 and 6 of SB 84 did not "amend" any particular section of the Code, the *Elliott* rationale applies here with equal force. Once enacted by the legislature and signed by the Governor, the entirety of the bill becomes effective Delaware law.

Having determined that the entirety of the enacted bill, including Sections 5 and 6, must be considered in interpreting SB 84, we turn to the merits of Smith's constitutionality claims.

---

21. *Starling v. State*, 882 A.2d 747, 756 (Del. 2005); *Thomas v. State*, 725 A.2d 424, 427 (Del.1999).

22. *Reargument Op.*, 2010 WL 1199525, at *1–3; *Motion to Dismiss Op.*, 2009 WL 5697869, at *3.

23. *See* 77 Del. Laws, ch. 97.

24. *See* 1 *Del. C.* § 201 (2010).

25. 1 *Del. C.* § 211(a) (2010).

26. A "construction clause" is a provision that directs how a statute is to be interpreted or construed. *See United States v. Kravitz*, 738 F.2d 102, 105 (3d Cir.1984) (discussing the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 *et seq.*, and its construction clause, which states that

the Act "shall be liberally construed to effectuate its remedial purposes."); *see also* Alan R. Romero, Note, *Interpretive Directions in Statutes*, 31 HARV. J. ON LEGIS. 211 (1994) (discussing the legislative use of construction clauses to influence statutory interpretation).

27. 1 *Del. C.* § 211(b) (2010) ("The Revisors *shall* omit . . . all validity, declaration of policy, and construction clauses, except when the retention thereof is necessary to preserve the full meaning and intent of the law.") (emphasis added).

28. *Ross v. State*, 990 A.2d 424, 428 (Del.2010) ("The role of the judiciary in interpreting a statute is to determine and give effect to the legislature's intent.").

29. *Elliott v. Blue Cross & Blue Shield of Del., Inc.*, 407 A.2d 524, 528 (Del.1979).

## B. Does SB 84 Violate The Separation of Powers Doctrine?

■ Smith first challenges SB 84 on the ground that it violates the constitutionally-mandated separation of powers between the judicial and the legislative branches, by overturning our decision in *Smith I*. Smith points out that Section 5 makes the new definition of legal "parent" retroactive, and that Section 6 prohibits a court from holding that *Smith I* has preclusive effect in determining whether Guest is a legal "parent" of ANS. Read together, Smith contends, those sections violate Delaware's separation of powers requirement, because a legislature cannot dictate how a court should apply the doctrines of collateral estoppel and *res judicata* when determining the effect of court judgments that have become final.

Smith analogizes this case to *Evans v. State*, where this Court determined that House Bill No. 31 ("HB 31") was unconstitutional because it specifically recited that "the decision of the Delaware Supreme Court in the case of *Evans v. State*, 2004 WL 2743546 (Del.Supr.), is null and void."[30] In *Evans*, we held that it was "constitutionally impermissible" for legislation to "require[ ] its own [retroactive] application in a case already adjudicated [and] reverse a determination once made, in a particular case."[31] Therefore, we found that the legislation challenged in *Evans* violated Article IV, §§ 1 and 11 of the Delaware Constitution, because it purported "to exercise judicial power in a specific case."[32]

■ Smith's argument is unpersuasive, for three reasons. First, it is well-recognized that the legislature may limit or bar the application of judge-made common law,[33] including preclusion doctrines such as collateral estoppel and *res judicata*.[34] Legislation of that kind does not amount to the General Assembly exercising "judicial power," nor does it raise a separation of powers issue.[35]

30. *Evans v. State*, 872 A.2d 539, 549 (Del. 2005); H.B. 31, § 1, 143th Gen. Assemb. (Del.2005) (codified at 10 *Del. C.* § 5402 (2010)).

31. *Evans*, 872 A.2d at 549 (quotation marks, alterations and citation omitted).

32. *Id.* at 549–50.

33. *See, e.g., A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1122 (Del.2009) (noting that the General Assembly may repeal the common law by statute, but "the legislative intent to do so [must be] plainly or clearly manifested" (quotation marks and citations omitted)); *Laws v. Webb*, 658 A.2d 1000, 1005 (Del.1995) ("The enactment of the comparative negligence statute manifests a legislative intent to change Delaware's common law rule of contributory negligence."), *overruled on other grounds by Lagola v. Thomas*, 867 A.2d 891, 892 (Del.2005); *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1090 (Del. 1995) ("Courts have also held that legislative intent to change the common law must be clearly expressed. . . .").

34. *See, e.g., Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (holding that Courts may assume "that Congress has legislated with an expectation that [preclusion] principle[s] will apply except when a statutory purpose to the contrary is evident." (quotation marks omitted)); RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(c) (1982) (recognizing that legislation may make *res judicata* inapplicable). *See also Bravo–Pedroza v. Gonzales*, 475 F.3d 1358, 1359 (9th Cir.2007) ("We find nothing in the relevant statutes making res judicata inapplicable."); *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1044 (8th Cir.1997) (recognizing that "Louisiana law permits exceptions to the general rule of res judicata" and citing LA.REV.STAT. ANN. § 13:4232(A)(1)).

35. *See Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.*, 489 A.2d 413, 417 (Del.1985) ("[N]either the Federal nor the State Constitution forbids legislative abolition of a common law cause of action to attain a permissible legislative objective." (citations omitted)).

Second, *Evans* is materially distinguishable from this case. In *Evans*, the General Assembly explicitly sought to render "null and void" this Court's final judgment in a prior case. Indeed, HB 31 expressly referenced the previous case name and citation in its text.[36] In the case of SB 84, that did not occur. Unlike HB 31, Section 6 of SB 84 does not identify a specific case, either by case name or citation.[37] Further, the Senate debates on SB 84 show that that bill was introduced specifically in response to this Court's implicit invitation in *Smith I*, wherein we observed that "[p]roviding relief in such situations [like Guest's] is a public policy decision for the General Assembly to make."[38] Unlike what occurred in *Evans*, SB 84 was not enacted to overrule retroactively our decision in *Smith I*.

Third, SB 84, as applied to this case, does not retroactively "reverse" our *Smith I* decision or render it "null and void." *Smith I* held that Guest lacked standing to petition for custody, because she was not a "parent" within the meaning of the then-applicable statutory definition.[39] That determination was not predicated upon, nor did this Court address, the merits of whether Guest was a *de facto* parent or had custody rights to ANS. *Smith I* addressed only the issue of standing.

■ A litigant's standing to sue (or lack thereof) may change over time.[40] Here,

the General Assembly enlarged the categories of statutorily-recognized parent-child relationships. That change in the statutory definition of "parent," in turn, enlarged the categories of litigants with standing to petition for custody.[41] Under the newly enacted version of 13 *Del. C.* § 8–201 (as amended by SB 84), *de facto* parents, such as Guest, are now "parents" who have standing to petition for child custody under 13 *Del. C.* § 721(a). SB 84 did not change the outcome of our decision in *Smith I*, however, because *Smith I* interpreted an earlier version of the law. That is, Guest and other *de facto* parents would still lack standing if they were to petition for custody under the pre-amendment version of Section 8–201, since the legal definition of "parent" at that time did not include a *de facto* parent.[42] Because SB 84 did not "reverse" or render "null and void" our decision in *Smith I*, the separation of powers rationale of *Evans v. State* is inapplicable.

C. *Does SB 84 Violate the "Single–Subject" Provision Of The Delaware Constitution?*

■ Smith next claims that SB 84 is invalid because it violates the single-subject requirement of the Delaware Constitution. This argument, which overlaps somewhat with Smith's separation of powers claim, runs as follows: Sections 1–4 of

---

**36.** H.B. 31, 143th Gen. Assemb. (Del.2005), codified at 10 *Del. C.* § 5401 *et seq.*

**37.** Rather, Section 6 provides that "[n]o Court decision" has preclusive effect. S.B. 84, § 6, 145th Gen. Assemb. (Del.2009).

**38.** *Smith I*, 968 A.2d 1, 16 (Del.2009).

**39.** *Id.* ("[Guest] is not a legal parent ... [t]herefore, we hold that [Guest] does not have standing to seek custody under section 721(a)."). *See also supra* note 7 (explaining the definition of legal "parent").

**40.** *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 824 (Del.1997) ("A change in the parties' standing may result from a myriad of subsequent legal or factual causes that occur while the litigation is in progress.").

**41.** *See* 13 *Del. C.* §§ 721(a), 8–102(12), 8–201 (2010).

**42.** *See* 13 *Del. C.* § 8–201 (2008) (amended 2009).

SB 84 purport to address the legal definition of "parent." Sections 5 and 6, however, are a legislative effort to exercise fundamental judicial powers—which is a "separate subject" under *Evans.* Combining those two separate subjects into one statute, therefore, violates the single-subject requirement.

■■■ Article II, section 16 of the Delaware Constitution provides that "[n]o bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title." [43] As explained in *Evans,* "[t]he single-subject and title provisions in Article II, § 16 are intended to assure sufficient notice that legislation, the content of which was inadequately brought to the public attention, or so-called sleeper legislation does not slip through the General Assembly." [44] That is, article II, section 16 is intended to prevent the introduction in the legislature of a bill with a seemingly "harmless title[ ]," but by the time it is enacted by both legislative chambers, it has collected such numerous amendments that its ultimate subject matter has changed entirely from what it was initially. [45] For that reason, a bill that contains multiple subjects or whose title would "trap the unwary into inaction" violates the Delaware Constitution. [46]

In *Evans,* we pointed out that HB 31 "graphically illustrates the dangers of an uninformed legislative vote where the title of [the] bill is inadequate." [47] The first part of HB 31 expressed a legislative intent to declare "null and void" this Court's earlier decision in *Evans v. State,* [48] whereas in the second part, the General Assembly established itself as "the ultimate arbiter of the intent, meaning, and construction of its laws." [49] Further, it required judicial officers to "strictly interpret or construe legislative intent" and to "use the utmost restraint in interpreting or construing the laws of this State." [50] The title of HB 31, however, gave no notice that it would impact "at least sixty other statutes in which the General Assembly stated that those statutes must be liberally or broadly construed to accomplish the General Assembly's intent." [51] We held, for those reasons, that HB 31 unconstitutionally contained two separate and distinct subjects of legislation—the first being to

---

**43.** DEL. CONST. art. II, § 16.

**44.** *Evans v. State,* 872 A.2d 539, 551 (Del. 2005) (internal quotation marks omitted).

**45.** *Id.* (citation omitted).

**46.** *Id.* (quotation marks and citation omitted).

**47.** *Id.*

**48.** 2004 WL 2743546 (Del. Nov. 23, 2004).

**49.** H.B. 31, 143th Gen. Assemb. (Del.2005), codified at 10 *Del. C.* § 5402 (2010).

**50.** The relevant portion of H.B. 31, codified at 10 *Del. C.* § 5403, reads:

(a) Delaware judicial officers may not create or amend statutes, nor second-guess the soundness of public policy or wisdom of the General Assembly in passing statutes, nor may they interpret or construe statutes and other Delaware law when the text is clear and unambiguous.
(b) Notwithstanding § 203 of Title 11, Delaware judicial officers shall strictly interpret or construe legislative intent.
(c) Delaware judicial officers shall use the utmost restraint when interpreting or construing the laws of this State.

**51.** *Evans,* 872 A.2d at 552 (emphasis omitted). H.B. 31's long title reads "AN ACT TO AMEND TITLE 10 OF THE DELAWARE CODE RELATING TO THE CASE OF WARD T. EVANS V. STATE OF DELAWARE, 2004 WL 2743546 (Del.Supr.) AND GENERALLY THE INTERPRETATION AND CONSTRUCTION OF DELAWARE LAWS BY DELAWARE JUDICIAL OFFICERS." H.B. 31.

"null[ify] and void" an earlier decision of this Court, and the second being "to confer upon the General Assembly fundamental judicial powers."[52]

The legislation involved in this case differs markedly from that invalidated in *Evans*. Unlike HB 31, SB 84 does not address multiple subjects. SB 84's title reads "AN ACT TO AMEND TITLE 13 OF THE DELAWARE CODE RELATING TO PARENTS."[53] Sections 1–3 add a new subsection to 13 *Del. C.* § 8–201 that includes *de facto* parent status as an additional type of legal parent-child relationship. Section 4 amends the statutory definition of "parent" in 13 *Del. C.* § 2302 to include a *de facto* parent.[54] Section 5 states that "[t]he provisions of this Act shall have retroactive effect," and Section 6 provides that "[n]o Court decision based upon a finding that Delaware does not recognize de facto parent status shall have collateral estoppel or res judicata effect." These latter two Sections fall within the scope of the title's stated subject matter, because they relate to defining, interpreting, and construing *de facto* parenthood.

Nor do Sections 5 and 6 of SB 84 introduce the separate subject of "establish[ing] prospective standards for the judicial interpretation and application of Delaware laws," as occurred in *Evans*.[55] Neither provision would affect "at least sixty other statutes," and neither purports "to confer upon the General Assembly fundamental judicial powers" or to declare the General Assembly as "the ultimate arbiter of the intent, meaning, and construction" of Delaware law. Section 6 merely specifies the circumstances where the judicial doctrines of collateral estoppel and *res judicata* will not apply. Those circumstances all relate to *de facto* parenthood.[56] In short, Sections 5 and 6 of SB 84 deal only with the one subject identified in SB 84's title— "parents," and more specifically, *de facto* parenthood.

## D. Does SB 84 Violate The Fourteenth Amendment?

Smith's final constitutional claim is that SB 84 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

### 1. Due Process Argument

Smith first argues that the Family Court violated her due process rights by failing to consider whether her rights as ANS's *sole* parent were being unconstitutionally infringed, before determining whether Guest had any parental rights at all. Smith relies on *Troxel v. Granville*,[57] where the United States Supreme Court held that a "nonparent" visitation statute violated a parent's due process rights because it "effectively permit[ted] any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review."[58] Smith contends that SB 84 similarly enables a nonparent, such as Guest, to petition the Family Court for visitation rights without requiring the Court to defer to Smith's decision, as ANS's sole parent,

---

**52.** *Evans*, 872 A.2d at 550.

**53.** *See* S.B. 84, 145th Gen. Assemb. (Del. 2009).

**54.** *Id.* at § 4, codified at 13 *Del. C.* § 2302(13) (" 'Parent' is as defined by § 8–201 of this title.").

**55.** *See Evans*, 872 A.2d at 550.

**56.** *See* S.B. 84, § 6.

**57.** 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

**58.** *Id.* at 67, 120 S.Ct. 2054.

that that visitation would not be in ANS's best interests.

*Troxel* does not control these facts. The issue here is not whether the Family Court has infringed Smith's fundamental parental right to control who has access to ANS by awarding Guest co-equal parental status. Rather, the issue is whether Guest is a legal "parent" of ANS who would also have parental rights to ANS—rights that are co-equal to Smith's. This is not a case, like *Troxel*, where a third party having no claim to a parent-child relationship (*e.g.*, the child's grandparents) seeks visitation rights.[59] Guest is not "any third party." Rather, she is a (claimed) *de facto* parent who (if her claim is established, as the Family Court found it was [60]) would also be a legal "parent" of ANS. Because Guest, as a legal parent, would have a co-equal "fundamental parental interest" in raising ANS, allowing Guest to pursue that interest through a legally-recognized channel cannot unconstitutionally infringe Smith's due process rights. In short,

Smith's due process claim fails for lack of a valid premise.

Our holding is supported by other state court decisions.[61] For example, in *In re Parentage of L.B.*,[62] the Washington Supreme Court addressed a situation nearly identical to the case at bar. There, the court considered whether the petitioner had standing to petition for custody of a minor child conceived through artificial insemination during the petitioner's 12–year same-sex relationship with the child's biological mother.[63] The biological mother argued that allowing the petitioner to seek custody of the minor child would infringe the biological mother's fundamental parental interests under *Troxel*.[64] The Washington Supreme Court held it would not, because *de facto* parents were "in legal parity" with biological and adoptive parents.[65] If the petitioner could establish *de facto* parentage, then the petitioner and the biological mother "would *both* have a fundamental liberty interest in the care,

---

59. *See id.* at 60, 120 S.Ct. 2054.

60. *Custody Petition Op.*, 2010 WL 2696112, at *15 (Del.Fam.Ct. Apr. 23, 2010) ("[Guest] has established that she is A.N.S.'s *de facto* parent pursuant to [13 *Del. C.*] § 8–201(c). Therefore, the Court finds that [Guest] is A.N.S.'s *de facto* parent.").

61. *See, e.g., C.E.W. v. D.E.W.*, 845 A.2d 1146 (Me.2004) (recognizing *de facto* parent status and placing a *de facto* parent in parity with a statutory parent); *Kulstad v. Maniaci*, 352 Mont. 513, 220 P.3d 595, 606 (2009) (holding that a statute, which granted a nonparent standing to seek a parenting interest of a minor child where a parent-child relationship had been established, did not violate adoptive parent's fundamental constitutional rights as a parent); *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 920 (2001) (concluding that a lesbian partner "assumed a parental status and discharged parental duties with the consent of [the biological mother]" and thus has standing as person *in loco parentis* to bring action

for partial custody and visitation); *Rubano v. DiCenzo*, 759 A.2d 959, 976 (R.I.2000) (finding no constitutional violation in permitting a *de facto* parent to petition for visitation and custody rights); *In re E.L.M.C.*, 100 P.3d 546, 558–61 (Colo.Ct.App.2004) (holding that a compelling state interest in preventing harm to a child satisfies strict scrutiny analysis, and affirming the recognition of the psychological (or *de facto* ) parent doctrine in the context of a former same-sex partner's petition for equal parenting time), *cert. denied sub nom. Clark v. McLeod*, 545 U.S. 1111, 125 S.Ct. 2551, 162 L.Ed.2d 287 (2005).

62. 155 Wash.2d 679, 122 P.3d 161 (2005) (en banc), *cert. denied sub nom. Britain v. Carvin*, 547 U.S. 1143, 126 S.Ct. 2021, 164 L.Ed.2d 806 (2006).

63. *Id.* at 163–64.

64. *Id.* at 177–79.

65. *Id.* at 177.

custody, and control of [the child]." [66] In those circumstances, there could be no due process violation.[67]

Some courts have concluded that under the common law, *de facto* parentage does not confer standing to petition for custody or visitation of a minor child.[68] Those cases are inapposite, however, because the right conferred here was created legislatively, not judicially. The Delaware General Assembly has expressly decreed that *de facto* parents are legal "parents" who have standing to petition for custody.[69] Moreover, none of those cases addresses the legal question presented here—whether a law permitting a *de facto* parent to seek custody of a minor child violates the due process rights of the child's other legal parent.[70] As discussed above, we conclude that it does not.

### 2. Equal Protection Argument

▮ Smith next claims that SB 84 violates the Equal Protection Clause, because it constitutes "special legislation," specifically directed at her, that changes the result in *Smith I*. This argument essentially restates, albeit in a different form, Smith's earlier claim that Sections 5 and 6 of SB 84 seek to nullify this Court's *Smith*

*I* decision.[71] More specifically, Smith argues that because those Sections undermine the finality of, and substantively overturn, *Smith I*, SB 84 "draw[s] a line between [Smith] and all others who have prevailed in a final judicial determination [by] purporting to render *Smith I* a nullity, but permitting all other Supreme Court decisions to stand."

▮ To succeed on an equal protection claim under a "class of one" theory, the plaintiff must show that: (1) there are other similarly-situated people who were treated differently, and (2) there is no rational basis for that disparate treatment.[72] To prevail on the first prong, the plaintiff must show that the other similarly-situated persons are *"prima facie* identical in all relevant respects." [73]

Smith's claim fails, because she cannot show disparate treatment as between herself and other similarly-situated persons. That is, SB 84 does not create a "class of one," as Smith argues. Sections 5 and 6 of SB 84 do not "draw a line between [Smith] and all others who have prevailed in a final judicial determination," because SB 84 does not reverse or render our decision in *Smith I* "a nullity." [74]

---

66. *Id.* at 178 (quotation marks omitted).

67. *Id.*

68. *See, e.g., Jones v. Barlow,* 154 P.3d 808 (Utah 2007); *Janice M. v. Margaret K.,* 404 Md. 661, 948 A.2d 73 (App.2008).

69. *See* 13 *Del. C.* §§ 721(a), 8–102(12), 8–201 (2010).

70. Although the majority in those cases did not address the constitutional question presented here, the dissent in those cases found that recognition of *de facto* parenthood would not violate due process. *See Jones,* 154 P.3d at 833 (Durham, C.J., dissenting) ("[T]he *de facto* parent doctrine does not violate a parent's due process rights under *Troxel.*"); *Jan-*

ice *M.,* 948 A.2d at 99 (Raker, J, dissenting) ("The [United States] Supreme Court's opinion in *Troxel v. Granville* did not prohibit the recognition of *de facto* parents.").

71. *See supra* Part I.B (separation of powers discussion).

72. *New Castle Cnty. v. Wilm. Hospitality, LLC,* 963 A.2d 738, 743 (Del.2008) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam)).

73. *Id.* (quoting *Purze v. Village of Winthrop Harbor,* 286 F.3d 452, 455 (7th Cir.2002)).

74. As earlier explained, under the pre-July 6, 2009 version of the Delaware Code, Guest

Nor does SB 84 amount to "special legislation" that creates an "arbitrary and discriminatory classification," since it does not specifically name Smith as the person who is to benefit (or be harmed).[75] To the contrary, SB 84 operates identically and in the same manner upon all persons similarly situated—i.e., all those who are the subject of a judicial decision that de facto parent status is not recognized in Delaware.[76] Because SB 84 does not create any classifications among those who have been subjected to that judicial determination, it does not offend the Equal Protection Clause of the Fourteenth Amendment.

\* \* \*

Having determined that SB 84 is valid and constitutional in its entirety, we turn to Smith's res judicata and "retroactivity" claims.

## II. Does Res Judicata or Collateral Estoppel Bar Guest's Custody Petition?

Smith's second claim is that the Family Court erred in holding that res judicata did not bar Guest's July 6, 2009 custody petition. The Family Court concluded that because Smith I was decided on standing grounds and not "on the merits," res judicata would not apply.[77] That conclusion was erroneous, Smith urges, because Smith I, properly read, determined that Guest was not a legal "parent" of ANS. Therefore, res judicata precludes Guest from bringing her renewed custody petition, because this Court has previously (and finally) determined that she is not a legal "parent."

■ We review de novo a trial court's formulation and application of legal principles.[78] For Smith I to bar Guest's renewed custody petition, Smith I must constitute either collateral estoppel or res judicata. Section 6 of SB 84 expressly provides, however, that "[n]o Court decision based upon a finding that Delaware does not recognize de facto parent status shall have collateral estoppel or res judicata effect."[79] As earlier discussed, the General Assembly may limit the application of judicial common law through legislation, which is what occurred here.[80]

and other de facto parents would not have standing to petition for custody of a minor child. See supra text accompanying notes 38–42.

75. See Bryson v. Bd. of Funeral Serv. Practitioners of the State of Del., 402 A.2d 398 (Del.Super.Ct.1979) (concluding that the challenged statute violated the Equal Protection Clause because it named a specific individual, thereby giving that individual a right that would not have been available to others in similar circumstances).

76. See Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); Linder v. Smith, 193 Mont. 20, 629 P.2d 1187, 1193 (1981) ("A law which operates in the same manner upon all persons in like circumstances is not 'special' in the constitutional sense.").

77. Motion to Dismiss Op., 2009 WL 5697869, at *7 (Del.Fam.Ct. Dec. 21, 2009). The Family Court also concluded that res judicata did not apply because Smith I held Guest lacked standing to bring her original custody petition, and therefore, the Family Court lacked subject matter jurisdiction over Guest's original petition. Id. That conclusion was error, because the Family Court has exclusive original subject matter jurisdiction over custody petitions. See 10 Del. C. § 921(3) (2010) (conferring subject matter jurisdiction).

78. Turner v. State, 957 A.2d 565, 572 (Del. 2008).

79. S.B. 84, § 6, 145th Gen. Assemb. (Del. 2009).

80. See supra notes 33–34 & accompanying text.

Therefore, *Smith I* does not bar Guest's renewed custody petition under either preclusion doctrine.

■ But even if the doctrines of *res judicata* and collateral estoppel were otherwise available, they still would not bar Guest's renewed custody petition. The bar of *res judicata* arises where there has been a final judgment on the merits in a first suit involving the same parties, followed by a second suit based on the same cause of action.[81] In those circumstances, *res judicata* bars the second suit. In contrast to *res judicata* (which precludes a subsequent lawsuit involving same parties based on same cause of action), collateral estoppel precludes a party from relitigating a fact issue that has previously been litigated and decided in a prior action involving that party.[82] "A claim will be collaterally estopped only if the same [factual] issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment." [83]

■ Collateral estoppel does not apply because *Smith I* never addressed or decided the factual issue presented here—whether Guest is a *de facto* parent of ANS. In *Smith I*, all we held was that the statutory definition of legal "parent"—as defined by a prior version of 13 *Del. C.* § 8–201—did not include a *de facto* parent.[84]

Since by definition Guest was not a legal "parent," it did not matter, nor was the Court required to decide, whether Guest was a *de facto* parent of ANS. Thereafter, in SB 84 the General Assembly amended the statutory definition of legal "parent" to encompass *de facto* parenthood. That amendment made relevant for the first time the merits question of whether Guest is (as she claims to be, and as the Family Court found) a *de facto* parent of ANS. Because that merits issue was never raised or decided in *Smith I*, collateral estoppel could not preclude its assertion in this action.

■ *Res judicata* is also inapplicable. First, *Smith I* was not a "final judgment on the merits" that operates to bar Guest's 2009 custody petition. Guest's initial 2004 custody petition was brought under the prior statutory definition of legal "parent." *Smith I* held only that Guest did not have standing to bring her 2004 custody petition under that provision.[85] As we have explained, "[s]tanding is the requisite interest that must exist in the outcome of the litigation at the time the action is commenced." [86] "It is concerned only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy." [87] Because *Smith I* did *not* reach the merits of Guest's 2004 custody petition,

81. *Bradley v. Div. of Child Support Enforcement ex rel. Patterson,* 582 A.2d 478, 480 (Del.1990).

82. *Columbia Cas. Co. v. Playtex FP, Inc.,* 584 A.2d 1214, 1216 n. 4 (Del.1991).

83. *Sanders v. Malik,* 711 A.2d 32, 33–34 (Del. 1998); *see also Messick v. Star Enter.,* 655 A.2d 1209, 1211 (Del.1995) ("The test for applying collateral estoppel requires that (1) a question of fact essential to the judgment, (2) be litigated and (3) determined (4) by a valid and final judgment." (quotation marks and citation omitted)).

84. *Smith I,* 968 A.2d 1, 14–15 (Del.2009); *see also* 13 *Del. C.* § 8–102(12) (2008); 13 *Del. C.* § 8–201 (2008) (amended 2009).

85. *Smith I,* 968 A.2d at 16.

86. *Gen. Motors Corp. v. New Castle Cnty.,* 701 A.2d 819, 823 (Del.1997).

87. *Stuart Kingston, Inc. v. Robinson,* 596 A.2d 1378, 1382 (Del.1991).

*Smith I* is not a "final judgment on the merits" that bars Guest's renewed custody petition under the doctrine of *res judicata*.[88]

Second, it is well-recognized that the relitigation of an issue of law between the same parties is not precluded where a new determination is warranted to take into account an intervening change in the applicable law.[89] "[S]tatutory changes that occur after the previous litigation has concluded may justify a new action."[90] By changing the definition of legal "parent," the General Assembly conferred standing upon all persons who would qualify as *de facto* parents to petition for custody of a minor child. That statutory change was enacted specifically in response to this Court's invitation in *Smith I*. The rationale underlying *res judicata*, namely "the conclusive resolution of disputes,"[91] is not implicated here, because by enacting SB 84, the legislature expressly intended to enable persons such as Guest to petition for custody.[92] Before SB 84, Guest had no legal ability to do so.

## III. Did The Family Court Err In Applying SB 84 "Retroactively"?

 Smith's final claim arises from the Family Court's denial of her two motions *in limine*. She argues that in determining whether Guest was a *de facto* parent, the Family Court erroneously applied SB 84 by considering evidence of events that occurred before the bill's enactment date (July 6, 2009). Smith cites *Pullman, Inc. v. Phoenix Steel Corp.*[93] as support for her argument that when applying a statute, a court may consider only events occurring after that statute's enactment date.

 We normally review a trial court's decision to exclude evidence for abuse of discretion.[94] Smith's claim, however, requires us to interpret a statute. We review questions of statutory interpretation *de novo* to determine whether a trial court "erred as a matter of law in formu-

88. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (holding that a litigant must first have standing to be able to assert a claim for a final decision on the merits); *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1346 (Fed.Cir.2007) (citing long-standing precedent that final judgment requires a decision "on the merits"); *Ruiz Rivera v. Holder*, 666 F.Supp.2d 82, 91 (D.D.C. 2009) (holding that "the Court's previous decision ... was a dismissal on standing grounds, not a final judgment on the merits, and as a result, it cannot be said that the plaintiff received or had a full and fair opportunity to litigate the issues alleged in this action." (internal quotation marks and citations omitted)).

89. *Davis v. United States*, 417 U.S. 333, 342–47, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (concluding that although an issue had been previously decided on direct appeal, there had been an intervening change in the law entitling a defendant to relitigate that issue in a motion to vacate judgment); RESTATEMENT (SECOND) OF JUDGMENTS § 28(2) (1982) (discuss-

ing exceptions to the general rule of issue preclusion).

90. *Alvear–Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir.2008) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir.1988), and 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 131.22[3] (3d ed.1999)).

91. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

92. *See* 50 C.J.S. JUDGMENTS § 989 (2010) (recognizing that *res judicata* does not apply where a second suit seeks an adjudication of rights under a statute enacted subsequent to the determination of the first action).

93. 304 A.2d 334 (Del.Super.Ct.1973).

94. *Kiser v. State*, 769 A.2d 736, 739 (Del. 2001).

lating and applying legal precepts." [95] Under Delaware law, there must be clear legislative intent for a law to be applied retroactively.[96]

Smith's reliance on *Pullman* is misplaced. In *Pullman,* the Superior Court concluded that the new statute did not permit consideration of evidence occurring before the statute's enactment date, because "[b]y its express terms, the new law is not retroactive...." [97] The court then concluded that "it was the intent of the legislature to allow all contracts entered into prior to the effective date of the new law to remain unaffected by the [statutory] change...." [98]

This case differs materially from *Pullman.* Here, the General Assembly clearly intended for SB 84 to apply to past events. Section 5 of SB 84 expressly provides that SB 84 "shall have retroactive effect." [99] And, apart from Section 5, the codified statutory language itself also supports this conclusion—newly enacted Section 8–201(c) requires a court to look back in time to determine whether a *de facto* parent-child relationship has been established.[100] That codified language evinces a statutory intent for the court to consider pre-enact-

ment events. On that basis, the Family Court properly considered events that occurred before SB 84's July 6, 2009 enactment date in determining whether Guest is a *de facto* parent of ANS.

## CONCLUSION

We empathize with both parties in having to continue the process of litigating who has custody of ANS. We also are sensitive to the emotional considerations and frustrations that both parties have experienced throughout this process. The General Assembly, however, has made a public policy decision to recognize persons, such as Guest, as legal "parents" who are entitled to seek custody of their minor children. Our judicial role requires us to give full meaning and effect to those legislative changes. For the above reasons, the judgment of the Family Court is affirmed.

---

**95.** *Wilson v. Sico,* 713 A.2d 923, 924 (Del. 1998).

**96.** *Hubbard v. Hibbard Brown & Co.,* 633 A.2d 345, 354 (Del.1993) ("Delaware courts have recognized the general principle that statutes will not be retroactively applied unless there is a clear legislative intent to do so.").

**97.** *Pullman,* 304 A.2d at 338.

**98.** *Id.*

**99.** S.B. 84, § 5, 145th Gen. Assemb. (Del. 2009).

**100.** 13 *Del. C.* § 8–201(c) (2010).