Submitted March 10, affirmed as modified April 19, 1977

# VALLEY IRON & STEEL CO., *Respondent,*
## *v.*
# THORIN, *Appellant.*
## (No. 75-4431, SC 24682)

562 P2d 1212

Terence J. Hammons, of Hammons, Phillips & Jensen, Eugene, for appellant.

No appearance by respondent.

LENT, J.

**LENT, J.**

Plaintiff brought an action in assumpsit for the reasonable value of goods sold and delivered to the defendant. Defendant pleaded affirmative defenses, alleging breaches of the implied warranties of merchantability and fitness for particular purpose. ORS 72.3140; 72.3150. Following a trial to the court, judgment was entered in favor of plaintiff. Defendant appeals, claiming that the court erred in failing to find breaches of the implied warranties and improperly fixed the amount of damages.

Because of the trial court's general finding in favor of plaintiff, we review the evidence in the light most favorable to its contentions.

Plaintiff is a corporation engaged in the manufacture of cast iron products. In 1974, defendant was establishing a retail store to sell equipment and supplies for tree-planting contractors and workers. In September of that year, defendant's agent, Steven Gibbs, met with Roger Herring, Manager of Valley Iron & Steel. Mr. Gibbs inquired if plaintiff could manufacture castings of hoedad collars. A hoedad is a forestry tool used for planting seedling trees. The collar of a hoedad secures the metal blade to a wooden handle.

Mr. Gibbs showed plaintiff a sample collar casting made by Western Fire Equipment and asked if plaintiff could duplicate the casting. The sample collar was shown with a handle, and Mr. Gibbs explained that the tool was an impact tool used for planting trees and that occasionally rocks are struck during the planting process. Plaintiff's witness, Mr. Herring, testified:

"... Mr. Gibbs came in, spoke to me, told me that he needed this particular type of casting, briefly described its intended use, asked me if we could make them.

"I indicated we could. It was a very brief discussion in regards to the type of material we were going to use, and I indicated that because there was potential chance of

hitting rock in this . . . operation . . . that it would have to be made out of somewhat of a durable material."

Mr. Herring suggested that the castings be made of durable iron. The parties agreed upon a price, and after defendant obtained a core box and pattern from the model collar, manufacturing commenced. The collars were delivered to defendant in early October, 1974.

Problems developed with the finished product. Defendant's customers complained that the castings were breaking. Eventually defendant returned up to 80% of the castings to the plaintiff. Another foundry later made satisfactory castings from the same core box and pattern but from mild steel instead of cast iron.

At the conclusion of the trial, the court made the following findings:

> "I am not going to make any specific findings—just some general findings—but I will say that my general findings are based upon two findings, I suppose. One is that Mr. Gibbs' directions to Mr. Herring in this case were not sufficient in the sense that the Court believes that he knew enough about what he was doing when he went out there to give directions, and the Court does not feel that Mr. Herring did anything that was legally wrong and then didn't comply with what he said he was going to do.
>
> "In other words, the Court believes that the one at fault was Mr. Gibbs in this particular case. 'Fault' may not be exactly the correct word, but that it was the legal duty of Mr. Gibbs to do more than he did, rather than Mr. Herring doing more than he did.
>
> "So, the Court—then, the general finding is that I am finding for the plaintiff."

Defendant contends on appeal that the court erred in failing to find the existence of an implied warranty of merchantability under ORS 72.3140 and an implied warranty of fitness for a particular purpose under ORS 72.3150. ORS 72.3140 provides that:

> "72.3140. Implied warranty: merchantability; usage

[ 106 ]

*of trade.* (1) Unless excluded or modified as provided in ORS 72.3160, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *.

"(2) Goods to be merchantable must be at least such as:

"* * * * *.

"(c) Are fit for the ordinary purposes for which such goods are used; * * *."

In denying defendant any recovery under this theory, the trial court must have concluded either that plaintiff was not a "merchant with respect to goods of that kind" or that the goods were "fit for the ordinary purposes for which such goods are used." It is undisputed that the products were "goods"[1] and that there was a "contract for their sale." Any implied warranty which existed was not excluded or modified under ORS 72.3160.[2]

■ "Merchant" is defined by ORS 72.1040 as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction * * *." While the evidence shows that plaintiff was unfamiliar with hoedads and had not previously manufactured hoedad collars, plaintiff did hold itself out, by operating a foundry, as having skill in the "practice" of casting iron and presumably in the selection of materials to be used in manufacturing castings. Inasmuch as this transaction involved the

---

[1] "Specially manufactured goods" are included within the definition of "goods" in ORS 72.1050.

[2] We do not conclude that plaintiff, by promising to make the castings out of "durable iron" or saying that it was not performing engineering services, effectively modified or excluded any implied warranties as to the ingredients used in manufacturing the castings under ORS 72.3160. Such language does not "in common understanding call the buyer's attention to the exclusion of warranties and make plain that there is no implied warranty." ORS 72.3160(3)(a).

selection of the type of metal appropriate for hoedad collars, plaintiff was a merchant.[3]

■■ Likewise, plaintiff, for purposes of ORS 72.3140, was a merchant "with respect to goods of that kind"; i.e., castings. Whether this provision is interpreted broadly (in this case to mean castings) or narrowly (to mean hoedad collars) would depend upon the facts of the case. Only merchants, under the Code, warrant merchantability; and this is so because of their expertise or familiarity with the processes or products involved in the transaction. This skill or knowledge is presumed from previous similar transactions. Plaintiff has in the past assisted buyers in choosing particular types of metals to fulfill various tasks in its manufacture of castings.[4] Where the alleged unfitness under ORS 72.3140 arises from this type of choice, plaintiff should be held to the stricter standard imposed on merchants.[5]

The remaining issue is whether the collars were "fit for the ordinary purposes for which such goods are used." The ordinary purpose of custom-made castings depends upon their designated use. Without such a tag the uses would vary so much that any function could be isolated as "ordinary."

---

[3] In *Blockhead, Inc. v. Plastic Forming Company, Inc.,* 402 F.Supp. at 1017 (D.Conn.1975), the court held that: "The term 'practices' indicates that one may be a merchant of goods by virtue of his involvement in the process by which those goods are produced as well as by sale of the finished goods from inventory." (402 F.Supp. at 1025.)

[4] Mr. Herring testified that he tried to imply to buyers that no guarantee was made as to the selection of the appropriate material for casting but that any lack of guarantee was not discussed with Mr. Gibbs. In special order situations like the present case, it was customary with plaintiff to use the "best efforts at foundry" as to the choice of the proper alloy.

[5] Thus in cases where the seller possesses no degree of discretion so as to warrant his or her expertise; e.g., where the product is manufactured strictly in accordance with buyer specifications, there may be no implied warranties. *See* Official Comments to the U.C.C., § 2-316, Comment 9; *School Supply Service Co. v. J. H. Keeney & Co.,* 410 F2d 481, 483 (5th Cir 1969); *Rust Engineering Co. v. Lawrence Pumps, Inc.,* 401 F.Supp.328, 333 (D.Mass.1975).

■ The trial court felt that plaintiff was unaware of the intended use. However, the testimony of Mr. Herring shows the contrary. Plaintiff knew that the castings were to join the handle and blade in tree-planting impact tools which occasionally would strike rock. Since the castings were not fit for this purpose, the warranty was breached.

■■ Similarly, plaintiff breached the warranty of fitness for a particular purpose. ORS 72.3150 provides:

> "*Implied warranty: fitness for particular purpose.* Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under ORS 72.3160 an implied warranty that the goods shall be fit for such purpose."

Official Comment 1 to this section states that:

> "Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists. The buyer, of course, must actually be relying on the seller."

In this case, the undisputed evidence shows that the buyer made known the intended purpose and that the choice of metal to be used was left to the discretion of the seller. From this the seller had "reason to know" that buyer was relying on its judgment. It is also plain that the buyer did so rely. It follows that the warranty existed and evidence existed that it was breached.[6]

---

[6]Where goods are specially manufactured goods, the ordinary purpose of such goods may be equivalent to their particular purpose for purposes of the warranty enumerated in ORS 72.3150. *See, generally, Filler v. Rayex Corp.,* 435 F2d 336 (7th Cir 1970); *Tennessee Carolina Transp., Inc. v. Strick Corp.,* 283 N.C. 423, 196 S.E.2d 711 (1973). *Contra, Blockhead, Inc. v. Plastic Forming Company, Inc., supra* n. 3.

Official Comment 2 to the Code states: "A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose."

■■ The trial court rested its decision upon the "fault" of the defendant in failing to provide additional information on the intended use of the castings. "Fault," as such, is irrelevant when dealing with implied warranties. *State ex rel Western Seed v. Campbell,* 250 Or 262, 266, 442 P2d 215 (1967). It is true that the existence of a warranty of fitness for a particular purpose depends in part upon the comparative knowledge and skill of the parties. *Blockhead, Inc. v. Plastic Forming Company, Inc.,* 402 F.Supp.1017, 1024 (D.Conn.1975). Here, however, defendant made known his general requirements and the purpose for which the goods were to be used. We fail to see what more the defendant could have disclosed. Where, as here, the needs of a buyer are disclosed and the seller has reason to know of the buyer's reliance, it is incumbent upon the seller to further inquire as to the buyer's wants before representing that the goods can be provided. *Lewis v. Mobil Oil Corp.,* 438 F.2d 500 (8th Cir 1971). *See also Northern Plumbing Supply, Inc. v. Gates,* 196 NW2d 70 (N.D.1972).

■ In this case the trial court found that the reasonable value of each casting was $3.75. She estimated the value of the goods returned to be $27.42. Implicit in this finding is the conclusion that 457 of the 571 pieces were returned to the seller.[7] Because we conclude that defendant rightfully revoked acceptance under ORS 72.6080(1)(b), inasmuch as the goods were unfit, defendant has no further obligation as to the returned goods. ORS 72.6020(2)(c). The defendant, however, is obligated to pay for the remaining 114 castings which it accepted. Accordingly, under our powers as enumerated in the Oregon Constitution,

---

[7]Testimony at the trial by Mr. Herring was that the individual castings weighed around two pounds apiece and that the scrap value was three cents per pound. If each piece was worth six cents as scrap, an offset of $27.42 equates to 457 returned castings. This is consistent with Mr. Herring's testimony that 60-80 of the castings were returned, as 457 is 80% of the 471 units sold.

Am. Art. VII, § 3, plaintiff's judgment is reduced to $427.50 (the value of 114 pieces at $3.75 per unit).

Affirmed as modified.