Argued and submitted September 15, affirmed November 24, 1980

# SWAN ISLAND SHEET METAL WORKS, INC.
## *Appellant,*
### *v.*
# TROY'S CUSTOM SMOKING CO., INC.
## *Respondent.*
## (No. 177-308, CA 17544)
### 619 P2d 1326

Robert T. Scherzer, Portland, argued the cause for appellant. With him on the brief was Wheelock, Niehaus, Hanna, Murphy, Green & Osaka, Portland.

George R. Waldum, Portland, argued the cause and filed the brief for respondent.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff, [Swan Island], brought an action against defendant, [Troy's], to recover the price of a crab cooker manufactured by Swan Island and sold to Troy's. Defendant counterclaimed for consequential damages arising from an alleged breach of an implied warranty of fitness for a particular purpose, ORS 72.3150. After a trial to the court, the court awarded defendant $2,950 in damages, together with costs. Plaintiff appeals, arguing, *inter alia,* that the facts do not show an implied warranty of fitness for a particular purpose. We affirm.

In July, 1976, Peter Troy, president and owner of Troy's, contacted Paul Bader, president of Swan Island, and asked Bader if Swan Island could manufacture two stainless steel crab cookers. The cookers were to be modeled after a crab cooker to be delivered by Troy's to Swan Island and were to use gas burners. Troy explained to Bader the use of the cooker and some of the special needs a crab cooker must satisfy. The fabrication of the crab cooker presented no problems for Swan Island. Bader informed Troy, however, of his lack of knowledge of gas or gas burners. Both men agreed that Swan Island should seek outside expert advice on the design of the burner. A price for the crab cookers was agreed upon, as was a delivery date of early December, 1976, for the first cooker. Subsequently, Bader told Troy that he could not duplicate the burner on the old crab cooker and sent Troy a brochure illustrating the type of burner, designed to produce 120,000 BTUs, that had been selected by the experts Bader had consulted. The first cooker was delivered to Troy's Beaverton store November 18, 1976.

Troy and William Clayton, manager of Troy's Beaverton store, testified concerning the particular cooking requirements for crab. Crab is cooked by dropping it into boiling water, allowing the water to recover to a rolling boil, and then boiling the crab for ten minutes. If the recovery time exceeds ten minutes, or if the cooker cannot sustain a rolling boil, the crab is immersed too long in hot water, and the finished product is unmarketable.

Within a week or two after delivery, Swan Island received complaints from Troy's concerning the cooker's performance. The cooker cooked crab too slowly, and the pilot light and burner were difficult to light and keep lit. At Swan Island's request several experts examined the cooker and attempted to diagnose the problems. A serviceman from Northwest Natural Gas determined that there was sufficient gas pressure but that the problem was that the burner was too close to the bottom of the pot, causing the flame to smother and go out. He suggested that the burner be lowered, and if that measure failed, a power burner should be installed. Increasing the distance between the burner and the cooker did not solve the problems. Other experts concluded, contrary to the opinion of the Northwest Natural Gas serviceman, that insufficient gas pressure caused the difficulties.

Troy testified that between December, 1976, and March, 1977, the Beaverton store sold 73,671 pounds of crab, most of which was cooked in the Swan Island cooker. He also testified that in order to serve the customers of the Beaverton store during this period, the employes at Troy's Powell Boulevard store had to cook 11,535 extra pounds of crab to be delivered to the Beaverton store. He estimated that 1,200 pounds of crab were ruined in the Swan Island cooker. He calculated his damages at $2,950.

In March, 1977, Troy called Bader and told him that the cooker did not work properly and that Bader could pick it up at the store. The cooker remained in the store, however, for several months. On August 1, 1977, Troy sent Bader a letter stating in part, "We regret that we must reject the stainless steel crab cook pot that we are currently holding. The pot simply did not perform the task correctly and is not fit for its intended purpose." Soon thereafter, Troy delivered the pot to Swan Island. Troy's never paid for the crab cooker. The cooker was later resold to a fish market in Napa, California.

After hearing the evidence, the trial court made the following pertinent findings of fact:

"Said crab pot cooker was defective in that the burner location prevented proper combustion and prevented sufficient recovery time properly to cook crab and produced

symptoms of odor, smothering (which could cause the burner flame to go out), employee complaints associated with products of incomplete combustion and burner inefficiency, in that the burner produced a maximum output of 90,000 btu's regardless of gas pressure, which resulted in the cooker never working satisfactorily. The prior gas-fired pot in the defendant's store worked fine.

"* * * * *

"That after reasonable efforts were made to correct the crab pot cooker, but which efforts were unsuccessful, the defendant rejected the crab pot cooker in approximately March, 1977.

"That the defendant has proven by a preponderance of the evidence consequential damages of $2,950.00 as a result of defects in the crab pot cooker, including controls supplied by the plaintiff to the defendant, and not as a result of gas pressure fluctuations."

The court concluded as a matter of law that "the plaintiff impliedly warranted that the design of the burner, its placement and controls, was fit for the particular purpose of cooking crab, including proper recovery time," and that plaintiff breached this implied warranty.

■ On appeal, plaintiff argues that the trial court erred in finding an implied warranty of fitness for a particular purpose under these facts. ORS 72.3150 provides for a warranty of fitness for a particular purpose, as follows:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under ORS 72.3160 an implied warranty that the goods shall be fit for such purpose."

The following three conditions are necessary to create a warranty of fitness for a particular purpose:

"(1) The seller must have reason to know the buyer's particular purpose.

"(2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods.

"(3) The buyer must, in fact, rely upon the seller's skill or judgment." J. White and R. Summers, Uniform Commercial Code § 9-9 at 297 (1972).

*See Controltek, Inc. v. Kwikee Enterprises, Inc.,* 284 Or 123, 585 P2d 670 (1978); *Valley Iron and Steel v. Thorin,* 278 Or 103, 562 P2d 1212 (1977); *Beam v. Cullett,* 48 Or App 47, 49-50, 615 P2d 1196 (1980).

Plaintiff's major contention is that defendant did not rely on plaintiff's expertise to furnish a suitable product.

■ The existence of a warranty of fitness for a particular purpose depends in part on the comparative knowledge and skills of the parties. *Blockhead, Inc. v. Plastic Forming Company, Inc.,* 402 F Supp 1017, 1024 (D Conn 1975); *Controltek, Inc., v. Kwikee Enterprises, Inc., supra; Valley Iron and Steel v. Thorin, supra; Beam v. Cullett, supra.* There can be no justifiable reliance by a buyer possessing equal or superior knowledge or skill with respect to the product purchased by him. *Controltek, Inc., v. Kwikee Enterprises, Inc., supra; Valley Iron and Steel v. Thorin, supra; Beam v. Cullett, supra.* Since both Bader and Troy admitted ignorance of the design of gas burners, plaintiff argues, there could be no justifiable reliance by defendant on plaintiff's expertise.

■ It is uncontested, however, that defendant relied on plaintiff to assemble the expertise necessary to select a suitable burner and design its placement relative to the crab pot. We conclude that where, as here, the parties expressly agree that the seller will seek outside expert advice with respect to the selection and design of the product to be purchased by the buyer, and the buyer relies on the seller to do so, the requirement of reliance in ORS 72.3150 is satisfied.[1] Such reliance by the buyer is reasonable. Commercial necessity also justifies such reliance, since a manufacturer must often consult outside specialists on the design and incorporation of component parts into a larger product built and sold by the manufacturer.

---

[1] The result would differ if the seller disclaimed any expertise and the parties agreed that the *buyer* would consult outside experts for advice on the suitability of the product involved. In such a case, the buyer would not be relying on the seller's skill or knowledge to select or furnish suitable goods. *See Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.,* 445 F Supp 537 (D Mass 1977).

■ ■   Swan Island also argues that Troy's merely relied on it to duplicate an existing crab cooker supplied by Troy's as a model and, therefore, did not rely on Swan Island's skill and judgment. When goods are manufactured in accordance with specifications supplied by the buyer, there is no warranty of fitness for a particular purpose, because the buyer does not rely on the seller's skill or judgment. *Controltek, Inc., v. Kwikee Enterprises, Inc., supra,* 284 Or at 129. Here, however, Swan Island did not simply follow Troy's specifications, since a different burner had to be substituted due to the unavailability of a burner to match the one on the old crab cooker.

■   Swan Island contends that there was no evidence that it was aware of the particular problems unique to cooking crab, and thus that it had no reason to know the particular purpose for which the cooker was required. Bader's testimony indicates, however, that at the time of contracting he was aware that the cooker required certain controls and that a rapid recovery time was essential in order for the cooker to fulfill its intended purpose.

■   We do not address plaintiff's other points, regarding substantial impairment of the value of the cooker to the buyer due to nonconformity of the cooker to the implied warranty, ORS 72.6080(1), and timeliness of the buyer's revocation of acceptance, ORS 72.6080(2). We are satisfied that the trial court properly resolved these issues of fact in favor of the buyer.

   Affirmed.