**ALUMAX ALUMINUM CORPORATION, MAGNOLIA DIVISION,**
Plaintiff/Appellee,

v.

**ARMSTRONG CEILING SYSTEMS, INC., Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 23, 1987.

Permission to Appeal Denied
by Supreme Court
Jan. 25, 1988.

Aaron Wyckoff, Chambers, Wyckoff & Kinnard, Nashville, for plaintiff/appellee.

Patrick J. McHale, Murfreesboro, for defendant/appellant.

## OPINION

TODD, Presiding Judge.

The defendant, Armstrong Ceiling Systems, Inc., has appealed from a non-jury judgment of $40,104.54 in favor of plaintiff, Alumax Aluminum Corporation for ceiling materials manufactured and delivered to defendant.

On May 30, 1984, plaintiff contracted to manufacture and deliver to defendant ceiling materials for installation in the Capitol Hill Office Building in Nashville, Tennessee. Sometime after delivery and acceptance of the materials, it was found that they were not of the correct dimensions, and the parties agreed that plaintiff "pick up" the materials and return them to plaintiff's plant. Most of the returned material was sold as scrap. Plaintiff's damages were computed and allowed by the Trial Court as follows:

| | | |
|---|---:|---:|
| Contract Price | | $49,596.00 |
| Incidental damages | | 750.00 |
| | | 50,347.00 |
| Payment by defendant | $2,331.18 | |
| Value of scrap | 7,306.88 | |
| Resalable parts | 604.40 | |
| | | 10,242.46 |
| | | $40,104.54 |

Defendant presents the issues as follows:

I. Whether or not the trial court erred in failing to find that Plaintiff breached Uniform Commercial Code warranties to Defendant regarding the material manufactured by Plaintiff and sold to Defendant, being an express warranty under T.C.A. § 47–2–313, and an implied warranty of fitness for a particular purpose under T.C.A. § 47–2–315.

II. Whether or not the trial court erred in imposing damages under T.C.A. § 47–2–709.

I.

Express or Implied Warranty

Defendant first argues that the plaintiff expressly warranted that the ceiling system would be in all respects adequate for the construction project for which it was intended. The construction specifications, which were in the possession of defendant, provided that the ceiling parts should measure 24½ by 48½ inches. The original written order did not state the exact size of the sections. Plaintiff did not have a copy of the specifications. Plaintiff's representative testified that he telephoned defendant to inquire as to the exact size and that the response was "Two by four", meaning 2 feet by 4 feet, or 24 by 48 inches (½ inch smaller in each dimension than required by the specifications.) Defendant's witness denied that this conversation occurred.

Plaintiff's witness testified that he offered to furnish to defendant free of charge "shop drawings" of the material to be furnished, but that defendant's representative declined stating that he did not need them and didn't have time to wait for them. The preparation of shop drawings of the materials to be furnished and submission of such shop drawings to the architect would have disclosed in advance the error in dimensions and would have prevented the present dispute.

The Trial Judge found:

11. Upon receiving the purchase order, Bob Hall, who had the responsibility of processing the order for Alumax in Magnolia, Arkansas called Charlie Adams at Defendant's office and asked him what module size was required for the project. Mr. Adams told Mr. Hall that the module size was to be *2' × 4"* and he described how the grid was to be routed. (Emphasis supplied.)

Defendant relies upon the testimony of plaintiff's agent as follows:

Q. Did you represent at any time during your dealings with Armstrong at any time that your principal, Alumax, *could*

furnish the requisite material for this project?

A. We *could* furnish the specified material, the S8A system, yes.

A. You indicated that your manufacturer *could* furnish it.

A. The S8A.

Q. Right. Did you indicate that they *could* furnish the proper material?

A. Yes, they *could* furnish the S8A material.

. . . .

Q. At all times you indicated to Armstrong Ceiling Systems or its principals that your manufacturer *could* provide them with the proper material for this project, is that right?

A. Yes, sir. The S8A section. (Emphasis supplied).

The testimony relied upon by defendant established a warranty that plaintiff *"could"* (was able to) furnish "proper material", but did not warrant that plaintiff would independently ascertain and follow the dimension stated in specifications held by defendant and not disclosed to plaintiff. According to plaintiff's evidence which was accredited by the Trial Judge, defendant represented to plaintiff that "proper material" was 24 inches by 48 inches.

It is apparently defendant's theory that the foregoing testimony established an obligation upon plaintiff to independently ascertain from the architect or from the specifications the exact size of the ceiling sections. Under other circumstances, this theory might be tenable; but, in view of the above testimony that plaintiff relied upon defendant to furnish the dimensions, and in view of the Trial Judge's acceptance of this version of the evidence, defendant's theory of the express warranty of plaintiff is not tenable.

Defendant also asserts an implied warranty of fitness and relies upon the testimony of its witness as follows:

Q. Did you rely upon Mr. Wendell (plaintiff's representative) to cause the proper material to be provided to you?

A. Correct.

This testimony is not sufficient to establish an implied warranty because there is no evidence that defendant's reliance was disclosed in advance to plaintiff so as to afford plaintiff an opportunity to disaffirm such reliance or to justify the reliance by independent investigation. Moreover, the fact that defendant had the specifications, did not correctly transmit them to plaintiff and refused to accept free shop drawings, all militate against any reliance upon implied warranty.

Finally, in support of its first issue, defendant insists that, even after receiving the erroneous dimensions from defendant, plaintiff should have verified the correctness of the dimensions, and/or should have cautioned defendant as to the importance of exact dimensions. Defendant cites *Valley Iron and Steel Co. v. Thorin*, 278 Or. 103, 562 P.2d 1212 (1977). In that case the critical characteristic of the material was not dimension but the type of metal used in manufacture. The buyer did not select the type of metal but made known to the seller the intended use, the choice of type of metal was left to the seller, and the seller "had reason to know" that the buyer was relying on the judgment of the seller. The authority is inapplicable to the facts of this case.

Defendant also relies upon *Addis v. Bernardin, Inc.*, 226 Kan. 241, 597 P.2d 250 (1979). This case involved the sale of lids for salad dressing jars which proved to be incompatible with salad dressing. The buyer ordered white plastic lined lids with gold lacquered interiors that looked like the lids he had been purchasing from another supplier. The previously used lids were shown to the seller who knew what would be placed in the containers under the lids. The seller's salesman expressed doubt that his lids would be suitable but accepted the order on the buyer's assurance that the lids bought from others had performed satisfactorily. It developed that the seller's lids, while similar in appearance, did not perform as did the lids they resembled.

The Kansas Court held that the superior knowledge of the seller required a clear warning of the fact that the seller's product was not suitable. In the present case, it was the defendant, rather than the plaintiff that had superior knowledge of the exact requirements, and its failure to communicate to plaintiff the exact requirements is the critical fact in the dispute. The Kansas authority is inapplicable to the facts of the present case.

■ In order to create a warranty of fitness for a particular purpose, the seller must have reason to know the particular purpose *and that the buyer is relying upon the seller's skill or judgment* to select or furnish suitable goods. *Fiddler's Inn v. Andrews Distributing Co.*, 612 S.W. 2d 166 (Tenn.App.1980).

In the present case, there is no direct evidence that seller had any reason to believe that defendant was depending upon seller to ascertain the precise dimensions of the material. The only direct, positive evidence is to the contrary; i.e. that defendant undertook to furnish precise dimensions, and did so erroneously.

In a non-jury case, the trial judge, who saw and heard the witnesses and observed their manner and demeanor on the witness stand, was in much better position than the appellate court to judge the weight and value of their testimony. Therefore his findings as to credibility are entitled to great weight on appeal. *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541 (Tenn. App.1985); *Duncan v. Duncan*, 686 S.W. 2d 568 (Tenn.App.1984); *Capitol City Bank v. Baker*, 59 Tenn. 477, 442 S.W.2d 259, (1969).

The findings of fact of a trial judge sitting without a jury are reviewed by this Court with a presumption of correctness unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d).

Nothing is found in this record to justify a reversal of the finding of fact by the Trial Judge as to the first issue which is resolved adversely to the defendant.

## II.

Defendant insists that the Trial Court used an erroneous standard for fixing damages. Particularly defendant takes issue with the finding of the Trial Judge that the material "was not reasonably resellable".

The uncontroverted evidence shows that the entire order of material was delivered to defendant's warehouse; that, after it was found to be of the wrong size, counsel for both sides agreed for plaintiff to "pick up" the material and return it to plaintiff's plant, and that plaintiff had no opportunity to sell the material except as scrap.

A review of the pleadings in the Trial Court discloses that the complaint refers to a "refusal of delivery" by the defendant. The answer of the defendant denies full performance by plaintiff and the amount alleged to be due, but there is no reference in either pleading to the disposition of the returned material as scrap or the propriety of so doing.

■ Generally the appellate courts will not rule upon a defense which was not presented to the Trial Court and is presented for the first time on appeal. *Campbell County Board of Education v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457 (Tenn.App. 1984).

■ Nevertheless, the evidence shows that, even though 24 inches by 48 inches was a frequent dimension of materials produced and sold by plaintiff, the sections delivered for defendant were produced with special punching and screw slots and therefore could not be sold to another purchaser without identical needs for location of such details. There is also evidence that plaintiff had no other opportunity to sell the material in its special condition at any time prior to trial.

The Trial Judge was therefore justified in his finding that the material "was not reasonably resellable" (for the same use).

Defendant relies upon T.C.A. § 47–2–709 which provides in pertinent part:

(2) Where the seller sues for the price he must hold for the buyer any goods which

have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold....

The quoted statute provides that the goods may be sold by the seller and requires that the purchaser must be credited with any amount obtained from such sale. This is exactly what occurred in the present case. The seller sold the returned goods for the best price available and credited the sale price to the amount due from defendant.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against defendant. The cause is remanded to the Trial Court for enforcement of its judgment.

Affirmed and remanded.

LEWIS and KOCH, JJ., concur.