IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2011 Session

## JEANETTE RAE JACKSON v. BRADLEY KENT SMITH

**Direct Appeal from the Chancery Court for McNairy County**
**No. 8710      William C. Cole, Chancellor**

_____

**No. W2011-00194-COA-R3-CV - Filed September 9, 2011**

_____

This is a grandparent visitation case. Following the death of her daughter (the minor child's mother), the Appellant grandmother petitioned the trial court for visitation rights with her granddaughter pursuant to Tennessee Code Annotated Section 36-6-306. The trial court denied visitation based upon its finding that Appellant had not carried her burden to demonstrate a danger of substantial harm to the child. No appeal was taken from this order. Subsequently, the Legislature amended Tennessee Code Annotated Section 36-6-306 to create a rebuttable presumption of substantial harm based upon the cessation of the relationship between the child and grandparent. After the law was changed, Appellant filed a second petition for visitation with her granddaughter, citing the amended statute as grounds for re-visiting the issue of visitation. The trial court granted Appellee father's Tennessee Rule of Civil Procedure 12.02 motion to dismiss the second petition on the ground of *res judicata*. We conclude that the doctrine of *res judicata* may apply even though there has been an intervening change in the substantive law. However, because the prior order, upon which the trial court based its *res judicata* finding, is not in the appellate record, this Court cannot review the question of whether the motion to dismiss was properly granted. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Andrea D. Sipes, Jackson, Tennessee and Carma D. McGee, Savannah, Tennessee, for the appellant, Jeanette Rae Jackson.

Curtis F. Hopper, Savannah, Tennessee, for the appellee, Bradley Kent Smith.

**OPINION**

Appellant Jeanette Rae Jackson is the maternal grandmother of M. K. S. (d.o.b. November 27, 2006). Appellee Bradley Kent Smith is M.K.S.'s biological father. In April 2009, the minor child's mother, Stephanie Lynn Smith (who is Ms. Jackson's daughter), was killed in a car accident. Following Ms. Smith's death, Mr. Smith would not allow Ms. Jackson visitation with the minor child.

On April 27, 2009, Ms. Jackson filed a petition for grandparent's visitation in the Chancery Court of McNairy County pursuant to Tennessee Code Annotated Section 36-6-306 (the "Grandparent Visitation Statute"). This petition is not part of the appellate record.

At the time Ms. Jackson filed her petition, the Grandparent Visitation Statute read, in relevant part, as follows:

> (a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts. . .necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:
>
> (1) The father or mother of an unmarried minor child is deceased;
>
> * * *
>
> (5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or
> (6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.
>
> (b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial

harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

* * *

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

(A) The child resided with the grandparent for at least six (6) consecutive months;
(B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or
(C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

* * *

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

After a two-day hearing, which was held on July 6 and September 28, 2009,[1] the trial court denied Ms. Jackson's petition for visitation by an order entered on October 2, 2009 (the "First Order"). The First Order is not in the appellate record. However, in its November 8,

---

[1] There is no transcript of these proceedings in the appellate record, nor has the Appellant proffered a Tennessee Rule of Appellate Procedure 24(c) Statement of the Evidence.

2010 order denying Ms. Jackson's second petition for visitation (which is the subject of the instant appeal), the court references its First Order, stating:

> This Court entered its order on October 2, 2009, denying Petitioner's request for visitation on the grounds that she failed to carry her burden under T.C.A. §36-6-306(b)(1) that loss of the relationship was likely to occasion severe emotional harm or presented the danger of other direct and substantial harm to the grandchild.

Ms. Jackson did not appeal the First Order. However, after her petition for visitation was denied, and due largely to the efforts of Ms. Jackson and her attorney, the General Assembly amended Tennessee Code Annotated Section 36-6-306 by adding subsection (b)(4), which states:

> For purposes of this section, if the child's parent is deceased and the grandparent seeking visitation is the parent of that deceased parent, there shall be a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent.

This amendment became effective on May 26, 2010.

As recently discussed in Marlene Eskind Moses and Jessica J. Uitto, The Current Status of Tennessee's Grandparent Visitation Law, Tenn. B. J., Jan. 2010, at 46, 24:

> Because of the great deference that courts give to parental decisions, when the court addresses grandparent visitation rights, it must perform a lengthy and complex three-pronged analysis. First, the grandparent seeking the court's intervention must show that one of six situations exists pursuant to Tenn. Code Ann. §36-6-306(a). Second, the court must determine whether there is a danger of substantial harm to the child if the child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn. Code Ann. §36-6-306(b)(1). In conjunction with this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code Ann. §36-6-306(b)(2). Third, if the court finds that there is danger of substantial harm if the child does

not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. §36-6-307.

*Id*. (footnotes omitted).

The May 26, 2010 amendment, adding section (b)(4) to the Grandparent Visitation Statute, shifted the burden of proof concerning the second-prong of the analysis, i.e., whether there is danger of substantial harm, from the grandparent to the opposing parent. Under the amended statute, if the child's parent is deceased, and that deceased parent is the child of the grandparent, the grandparent now has a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent (before the amendment, the burden was on the grandparent to show substantial harm).

On July 19, 2010, following the amendment to Tennessee Code Annotated Section 36-6-306, Ms. Jackson filed a second petition for visitation. This second petition, which is part of our record, relies solely upon the amendment to the Grandparent Visitation Statute as the ground for re-visiting the issue of Ms. Jackson's visitation with the child. On August 9, 2010, Mr. Smith filed a motion to dismiss Ms. Jackson's second petition, on the ground of *res judicata*; Mr. Smith filed a supplemental motion to dismiss on October 28, 2010.[2] Ms. Jackson opposed the motion.

A hearing was held on November 1, 2010. Neither a transcript of this hearing, nor a Tennessee Rule of Appellate Procedure 24(c) statement of the evidence is included in the appellate record. By order of November 8, 2010, the trial court dismissed Ms. Jackson's second petition upon its finding that it was barred under the doctrine of *res judicata*.

Ms. Jackson appeals this order and raises one issue for review, as stated in her brief:

Whether the trial chancery court erred by dismissing Appellant's [second] petition [for grandparent visitation] on the doctrine of *res judicata*?

_____

[2] Under Tennessee Rule of Civil Procedure 8.03, *res judicata* is an affirmative defense, which must be plead specially. Ordinarily the defense of *res judicata* is presented by answer, and not by motion. If it is shown by affidavit or other evidence that the facts constituting the defense are uncontroverted then a motion for summary judgment would be in order, *see* discussion *infra*. **Usrey v. Lewis**, 553 S.W.2d 612 (Tenn. Ct. App. 1977). (holding that the defendants' "Motion to Dismiss or Plea of Res Adjudicata" would be considered as an answer presenting the affirmative defense and as a motion for summary judgment. The court found, however, that the principle of *res judicata* did not apply and reversed the dismissal and remanded).

"A trial court's decision that a subsequent lawsuit is barred by principles of *res judicata* presents a question of law which this court reviews *de novo*." ***In re Estate of Boote***, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005); ***Morris v. Esmark Apparel, Inc.***, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991)). Before conducting a *de novo* review of whether the criteria for a finding of *res judicata* are met in this case, we must first address the threshold issue of whether the doctrine of *res judicata* is applicable in cases, such as this, where there has been an intervening change in the relevant law between the time of the filing of the first lawsuit and the second.

## Whether the doctrine of *res judicata* applies

Ms. Jackson argues that *res judicata* does not apply in this case because there has been an intervening change in the applicable law. In support of her argument, she cites the case of ***Cihlar v. Crawford***, 39 S.W.3d 172 (Tenn. Ct. App. 2000), wherein this Court held that "[t]he relitigation of an issue of law between the same two parties is not precluded when a new determination is warranted in order to take account of an intervening change in the applicable law or to avoid the inequitable administration of the law." *Id.* at 179 (citing Restatement (Second) of Judgments § 28(2) (1982)).[3] ***Cihlar***, unlike the case at bar, addresses the applicability of the doctrine of collateral estoppel (issue preclusion), when there has been an intervening change in applicable law. ***Cihlar v. Crawford***, 39 S.W.3d 172. From the trial court's order, it does not appear that collateral estoppel was actually considered in this case. The Court of Appeals has appellate jurisdiction only. ***Clement v. Nichols***, 186 Tenn. 235, 237, 209 S.W.2d 23, 23 (1948); ***Stewart Title Guar. Co. v. FDIC***, 936 S.W.2d 266, 270-71 (Tenn. Ct. App.1996); ***John Weis, Inc. v. Reed***, 22 Tenn. App. 90, 100, 118 S.W.2d 677, 683 (1938). Accordingly, we decline to consider issues and defenses that have not been presented to the trial court. ***Simpson v. Frontier Community Credit Union***, 810 S.W.2d 147, 153 (Tenn.1991); ***Alumax Aluminum Corp. v. Armstrong Ceiling Sys., Inc.***, 744 S.W.2d 907, 910 (Tenn. Ct. App.1987); ***Yarbrough v. Stiles***, 717 S.W.2d 886, 888 (Tenn. Ct. App.1986). In ***Milligan v. George,*** No. 01A01-9609-CH-00406, 1997 WL 379138 (Tenn. Ct. App. July 9, 1997), this Court declined to apply the doctrine of collateral

---

[3] The Restatement (Second) of Judgments § 28, which the ***Cihlar*** Court relied upon, is titled "Exceptions To The General Rule Of **Issue Preclusion**" (emphasis added), and provides, in pertinent part, that:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded ...[and] a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws....

estoppel when the trial court had not relied upon it in reaching its decision.  In that opinion, we specifically stated:

> The Georges' motion to dismiss the Milligans' complaint asserted only a *res judicata* defense. The trial court's opinion, bearing the combined style of Milligan v. George and Campbell v. George, was based only on *res judicata*. The trial court mentioned the doctrine of collateral estoppel in *dicta* when it observed: "[i]ssues perhaps could be raised as to whether collateral estoppel might apply, but those are not raised herein. Without a lengthy explanation, it would be the opinion of this Court, that collateral estoppel also would not bar the suit between Milligan and George." Later in the opinion, the trial court disposed of the motion to dismiss the Campbells' complaint on the grounds of *res judicata* without mentioning collateral estoppel. No conclusion can be drawn from this record other than that the Georges did not assert, and the trial court did not act on, a collateral estoppel defense...

*Milligan*, 1997 WL 379138, at \*3.  Likewise, in this appeal, it is apparent that Mr. Smith did not raise collateral estoppel as a defense, nor did the trial court consider collateral estoppel. Consequently, our review involves only the question of whether *res judicata* (claim preclusion) is applicable when there has been an intervening change in the law.

Although often used interchangeably, the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are not one and the same.  As explained in *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987):

> [T]he doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

Given the fact that these doctrines are separate and distinct legal constructs, the fact that there is an intervening-change-in-the-law exception to the applicability of collateral estoppel (*see* ***Cihlar*** and fn. 3, *supra*) does not, *ipso facto*, mean that this exception is also applicable in cases involving *res judicata*.  *See also* 47 *Am. Jur. 2d Judgments* §511 (2011)

("In some cases, the doctrine of *res judicata* operates despite a change in the law after the rendition of the judgment. . . . With respect to the doctrine of collateral estoppel, a change in the law after the rendition of the judgment may operate to deny conclusiveness to the judgment."). Tennessee courts have not yet had the occasion to explore the question of why *res judicata* and collateral estoppel are affected differently by changes in the law. However, one Maryland court has provided an explanation, which we find instructive:

> [The reason the two doctrines are affected differently by changes in law] seem[s] to be because of the far more limited purposes served by collateral estoppel. It never precludes the entire claim but only an issue actually litigated; and so exceptions to collateral estoppel present less danger to interests of repose and reliance and may be justified by correspondingly reduced showings of public interest or private justice than can exceptions to res judicata.

***Esslinger v. Baltimore City***, 622 A.2d 774, 784 at n.5 (Md. Ct. Spec. App. 1993).

At any rate, based upon the foregoing discussion, we do not find **Cihlar** to be controlling in this case. Nonetheless, we concede that the question of whether *res judicata* applies in cases where there has been an intervening change in the applicable law is not a well-settled issue. As noted in 50 C.J.S. Judgments §989 (20):

> The authorities are not in agreement as to whether res judicata is a defense where, between the time of the first judgment and the second, there has been an intervening decision or a change in the law creating an altered situation.
>
> In accordance with the general rule that the estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, it has been broadly held that res judicata is no defense where, between the time of the first judgment and the second, there has been an intervening decision or a change in the law creating an altered situation, as where the second suit seeks an adjudication of rights under a statute enacted subsequent to the determination of the first action, and it has been said that this rule applies to changes in the law including acts of the legislature, judicial decisions, and changes in regulations. However, a number of cases stand for the proposition that a prior adjudication is or may be conclusive of the parties' rights notwithstanding a subsequent change in the

law, at least where the claims at issue do not implicate fundamental constitutional rights. There is also authority that although changes in case law almost never provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment, statutory changes that occur after the previous litigation has concluded may justify a new action.

*Id.* (footnotes omitted).

Even the United States Supreme Court has changed its position on this issue. In ***State Farm Mut. Auto. Ins. Co. v. Duel***, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812 (1945), the Court stated that "it is . . . the general rule that *res judicata* is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." *Id.* at 162 (citations omitted). However, in ***Federated Dept. Stores, Inc. v. Moitie***, 452 U.S. 394, 101 S.Ct. 2424 (1981), the Supreme Court overruled its previous opinion in ***State Farm***, stating that "nor are the *res judicata* consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Id.* at 2428. From our research, it appears that the prevailing view is that a change in the law, in and of itself, is insufficient to bar the application of *res judicata*. *See e.g.*, ***Wilson v. Lynaugh***, 878 F.2d 846, 850-851 (5th Cir.1989), ***Precision Air Parts, Inc. v. Avco Corp.***, 736 F.2d 1499, 1503 (11th Cir.1984) ("The general rule in this circuit, and throughout the nation, is that changes in the law after a final judgment do not prevent the application of *res judicata* . . . even though the grounds on which the decision was based are subsequently overruled."); ***Barzin v. Selective Service Local Board No. 14***, 446 F.2d 1382, 1383 (3d. Cir. 1971) (recognizing that "a prior decision may serve as *res judicata* even if a contrary judicial decision on the legal issues involved intervenes between the first and second suits."). However, courts have recognized an exception to this principle in the case of momentous legal changes invoking important and fundamental changes in constitutional rights. For example, the Court of Appeals for the Eleventh Circuit did not apply *res judicata* to a state court judgment because three months after that judgment was issued the Supreme Court overruled the separate but equal doctrine in ***Brown v. Bd. of Education***, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *see also* ***Precision Air, Inc. v. Avco Corp.***, 736 F.2d 1499, 1504 (11th Cir. 1981) (discussing ***Christian v. Jemison***, 303 F.2d 52, 54 (5th Cir. 1962)). The former Fifth Circuit has also recognized an exception in cases involving constitutional law. "Faced with changing law, courts hearing questions of constitutional right cannot be limited by *res judicata*. If they were, the Constitution would be applied differently in different locations." ***Parnell v. Rapides Parish School Bd.***, 563 F.2d 180, 185 (5th Cir. 1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *see also* ***Jackson***

***v. DeSoto Parish School Bd.***, 585 F.2d 726 (5th Cir. 1978); ***Moch v. East Baton Rouge Parish School Bd.***, 548 F.2d 594 (5th Cir.), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977). A plaintiff may, therefore, be able to escape the application of *res judicata* by demonstrating that the relevant law has undergone "momentous ... [and] significant" changes since the prior litigation concluded. ***Precision Air Parts, Inc.***, 736 F.2d at 1504. Some jurisdictions have also carved out an exception to the general rule where the amendment to the law creates a new right. In ***Smith v. Guest****,* 16 A.3d 920 (Del. 2011)*,* the court held that the statutory change that occurred after the previous litigation justified a new action. Specifically, the court held that, by changing the definition of legal "parent," the General Assembly conferred standing upon all persons who would qualify as *de facto* parents to petition for custody of a minor child. Therefore, the court concluded that the rationale underlying *res judicata*, namely "the conclusive resolution of disputes," was not implicated because the legislature "expressly intended to enable persons such as Guest (the minor child's biological mother's same-sex partner) to petition for custody. Before [the statutory amendment], Guest had no legal ability to do so." ***Id***. The amendment to the Tennessee Grandparent Visitation Statute, shifting the burden of proof to the opposing parent, does not stand on par with such precedent shifting cases as ***Brown v. Bd. of Education***, nor does this amendment confer a new right. Consequently, these rarely used exceptions do not apply in the instant case.

Because one of the policies behind the doctrine of *res judicata* is "to prevent the splitting of a single cause of action and the use of several grounds for recovery under the same action as the basis for separate suits." 7 James W. Moore et al., Moore's Federal Practice and Procedure, ¶ 0.410[2] p. 363-364 (2d Ed.1974). The Restatement (Second) of Judgments § 28, which is titled "Exceptions to the General Rule Concerning Splitting," outlines certain other exceptions that may negate the general rule that *res judicata* is not barred by an intervening change in the law. Section 28 of the Restatement (Second) of Judgments provides, in relevant part:

> (1) When any of the following circumstances exists, the general rule of § 24 ["When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or

(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or

(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

The law is sparse in Tennessee on the question of whether *res judicata* is applicable when there has been an intervening change in the law; however, it appears that our courts have followed the general rule that changes in the law after a final judgment do not prevent the application of *res judicata*, and have heretofore declined to apply any of the exceptions outlined in the above caselaw. In **Moulton v. Ford Motor Co.,** 533 S.W.2d 295, 297 (Tenn. 1976), the Court held that, despite changes in decisional law, *res judicata* applied to bar petitioner from relitigating an earlier claim. Specifically, the Court stated that "[s]trong considerations of public policy demand that [changes in law] not be applied in such a manner as to revive cases wherein contrary results were reached." **Id.** at 296.

In *Regions Financial Corp. v. Marsh USA, Inc*., 310 S.W.3d 382 (Tenn. Ct. App. 2009), a breach of contract case, this Court specifically declined to apply any of the exceptions to claim splitting, which are outlined in The Restatement (Second) of Judgments § 26. Relying upon *Moulton*, the *Regions* Court noted that: ". . . Tennessee has a long-standing tradition in upholding judgments. We, therefore, decline Regions' invitation to adopt and apply any of these [Restatement] exceptions to claim preclusion." *Regions Financial Corp*, 310 S.W.3d at 400.

Given Tennessee's long-standing tradition of upholding judgments we must be prudent in applying any exception to the general rule that *res judicata* is applicable despite an intervening change in the law. *Regions Financial Corp*, 310 S.W.3d at 400. Under the particular facts of this case, and considering the nature of the statutory amendment, which merely shifted the burden of proof and did not create a new right or change a constitutional paradigm, we hold that the doctrine of *res judicata* may be applied in this case. Our holding, however, does not preclude an application of an exception to this general rule should a future case warrant. Having determined that *res judicata* may apply, we now turn to the question of whether the substantive criteria for a finding of *res judicata* are met in this case.

## Requirements for a Finding of *Res Judicata*

As briefly discussed above, *res judicata* is a claim preclusion doctrine that promotes finality in litigation. *Lien v. Couch*, 993 S.W.2d 53, 55 (Tenn. Ct. App.1998). The doctrine bars a second suit between the same parties on the same cause of action as to all issues which were or could have been litigated in the former suit. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.1987).

Because the principle of claim preclusion prevents parties from splitting their cause of action; it requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction. *Lien*, 993 S.W.2d at 56. Consequently, the doctrine of *res judicata* bars the litigation not only of those matters actually determined in the prior action, but also those that reasonably could have been litigated in the prior action. *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000).

The party asserting *res judicata* must demonstrate: (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties were involved in both suits; (3) that the same cause of action was involved in both suits; and (4) that the underlying judgment was final and on the merits. *Lien*, 993 S.W.2d at 56; *Collins v. Greene Co. Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App.1995).

The final criterion for application of the doctrine of *res judicata* is that the underlying judgment (here, the First Order) must have been a final adjudication on the merits. ***Roy v. Diamond***, 16 S.W.3d 783, 787 (Tenn. Ct. App.1999). It must have been final and must have concluded the rights of the party against whom the *res judicata* defense is asserted. ***Richardson***, 913 S.W.2d at 459.

In its November 8, 2010 order, the trial court specifically stated:

> Petitioner does not dispute the validity and finality of this Court's previous order [i.e., the First Order]. Instead, she argues that the change in the law mandates [a] re-trial of the case as she now has a presumption of substantial harm in her favor thereby shifting the burden to [Mr. Smith] to refute. No cases have been cited dealing directly with the issue of whether a litigant is entitled to a second day in court, or a second bite of the apple, when a statute has been amended.

As pointed out by the ***Moulton*** Court, validity of the prior order is not the gravamen of *res judicata*:

> The policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'....
>
> .... It is not material on this point whether the finding of the jury was right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

***Moulton***, 533 S.W.2d at 296 (internal citations omitted).

-13-

Rather, in reviewing a *res judicata* determination, it is the finality of the order, and not whether the holding was correct, which is the dispositive question.

In Tennessee, the finality of a judgment involves both substantive and technical requirements. Substantively, a judgment is final "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Richardson*, 913 S.W.2d at 460 (quoting *Saunders v. Metro. Gov't of Nashville & Davidson County*, 214 Tenn. 703, 383 S.W.2d 28, 31 (1964)). The technical requirements for finality of judgments are addressed in Tennessee Rule of Civil Procedure 58, which provides:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
> (1) the signatures of the judge and all parties or counsel, or
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
> (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.
> Following entry of judgment the clerk shall make appropriate docket notations and shall copy the judgment on the minutes, but failure to do so will not affect validity of the entry of judgment. When requested by counsel or pro se parties, the clerk shall forthwith mail or deliver a copy of the entered judgment to all parties or counsel. If the clerk fails to forthwith mail or deliver, a party prejudiced by that failure may seek relief under Rule 60.

Although both the substantive and technical requirements must be met, it is not necessary to have a trial for a judgment to be on the merits; rather, "[i]f the parties had an opportunity to be heard, and there are no technical defects, the judgment 'is on the merits, although there was no actual hearing or argument on the facts of the case.'" *Hollins v. Covington Pike Chrysler-Plymouth, Inc.*, No. W2002-00492-COA-R3-CV, 2002 WL 31895720, at *1 (Tenn. Ct. App. Dec. 23, 2002) (quoting 50 C.J.S. Judgments § 728 (1997)).[4]

_____

[4] For example, in *Hart v. Tourte*, 10 S.W.3d 263, 267 (Tenn. Ct. App. 1999), this court determined that dismissal of a prior proceeding because plaintiff failed to attach a properly authenticated foreign judgment to his petition for registration was dismissal on a non-merits ground and, therefore, *res judicata*

(continued...)

Thus, dismissal for procedural defects is not a determination on the merits so as to support a claim of *res judicata*. Where, however, a complaint has been dismissed for failure to state a claim upon which relief can be granted, such a dismissal is considered an adjudication on the merits. ***Rampy v. ICI Acrylics, Inc.***, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994). Consequently, if the grant of the motion to dismiss is based upon *res judicata*, the motion to dismiss necessarily requires consideration of evidence of the former judgment, and thus the pending motion must be treated as a motion for summary judgment. Tenn. R. Civ. P. 12.02.

As noted above, neither Ms. Jackson's first petition, nor the First Order thereon are in this appellate record. To carry its burden at the trial level, the party raising the defense of *res judicata* must generally put in evidence the record or a copy of the record of the former case. ***American National Bank v. Bradford***, 28 Tenn. App. 239, 188 S.W.2d 971 (1945). If the record does not conclusively show that a particular matter was determined in the former proceeding, the party relying on *res judicata* as a defense must supplement the record by other proof. ***Carter County v. Street***, 36 Tenn. App. 166, 252 S.W.2d 803 (1952).

Because no evidence of the former judgment is included in this record, we can only presume that the trial court took judicial notice of the former proceedings and judgments in the same court. Formerly, this was not permissible. ***American National Bank v. Bradford***, 28 Tenn. App. 239, 188 S.W.2d 979 (1949). However, Tennessee Rule of Evidence 201, which became effective January 1, 1990, provides:

> **Rule 201. Judicial notice of adjudicative facts.**-(a) Scope of Rule.-This rule governs only judicial notice of adjudicative facts.
> (b) Kinds of Facts.-A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
> (c) When Discretionary.-A court may take judicial notice whether requested or not.
> &ast; &ast; &ast;
> (e) Opportunity to Be Heard.-A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the

---

[4](...continued)
did not preclude the second lawsuit. ***Id***. at 267.

absence of prior notification, the request may be made after judicial notice is taken.

(f) Time of Taking Notice.-Judicial notice may be taken at any stage of the proceeding.

In ***Mandela v. Reynolds***, No. 01-A-01-9303-CH00126, 1993 WL 236607 (Tenn. Ct. App. June 30, 1993), a case in which the trial court took judicial notice of its prior order and proceedings, which were not included in the appellate record, we held:

> The prior proceedings and judgments in the same court were subject to judicial notice because they were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned", i.e., the records of the Trial Court. T.R.E. Rule 201(b)(2). The plaintiff had opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed, i.e., the nature of the prior proceedings and identity of same with the present proceeding. T.R.E. Rule 201(e). This opportunity to be heard included the obligation and responsibility to present and preserve in this record sufficient evidence to controvert the matters of which the Trial Court took judicial knowledge. This was not done.
>
> Without evidence of the details of the previous proceedings, this Court is not in position to review the action of the Trial Judge based upon his judicial knowledge of proceedings in the Court over which he presides, the records of which are readily accessible to the Trial Judge.
>
> The summary judgment of dismissal is affirmed.

***Id***. at *2-3.

Likewise, in the instant case, and as discussed above, we can only assume, in the absence of its inclusion in our appellate record, that the trial court took judicial notice of its prior proceedings, including the First Order, upon which it based its decision concerning *res judicata*. Like the ***Mandela*** Court, the omission of the prior order, from our record, precludes us from reviewing whether the First Order was, in fact, a final judgment because we do not have the trial court's ability to take judicial notice of these proceedings. While we may concede that the First Order was substantively valid in that it adjudicated all of the claims of all of the parties, it is our review of the technical requirements for finality of orders that is precluded by Appellant's failure to include the First Order in our record. As discussed above, at the trial level, it was Mr. Smith's burden, as the party asserting *res judicata*, to provide proof of a final judgment in a prior proceeding. ***American National Bank v.***

-16-

*Bradford*, 188 S.W.2d 971. However, at the appellate level it is incumbent upon the appellant to provide a record that is adequate for a meaningful review. Tenn. R. App. P. 24(b). While the trial court took judicial notice of its prior proceedings in this case, this Court cannot do the same. We are a reviewing court. Because the appellant has failed to meet her burden to provide an adequate record in this case, this Court cannot conduct a meaningful review of the question of whether the First Order was final from a technical standpoint. Tenn. Civ. P. 58. Consequently the summary judgment of dismissal is, therefore, affirmed.

For the foregoing reasons, we affirm the order of the trial court, dismissing Ms. Jackson's second petition for grandparent visitation. Costs of this appeal are assessed against the Appellant, Jeanette Rae Jackson, and her surety.

_____
J. STEVEN STAFFORD, JUDGE